[Civ. No. 19372.   Second Dist., Div. Three.   Aug. 5, 1953.]

LESTER E. HARDY, Respondent, v. SAN FERNANDO VALLEY CHAMBER OF COMMERCE et al., Appellants.

George M. Pierson for Appellants.

Lester E. Hardy and Jennings & Belcher for Respondent.

WOOD (Parker), J.—Action 'to recover attorney's fees allegedly due under an oral agreement between plaintiff and defendants. Judgment was for plaintiff in the sum of $2,533.25. Defendants appeal from the order denying their motion for a new trial, and from the judgment.

Appellants contend that plaintiff failed to establish the existence of an express contract between plaintiff and defendants providing for the payment to plaintiff of any sum whatever.

It appears that the San Fernando Valley Chamber of Commerce, a corporation and a defendant herein, was not a chamber of commerce in the ordinary acceptation of those words but it was operated as a private enterprise or business and it owned several parcels of real property. Dr. Canfield was president, and Mr. Courtney was secretary, of the purported chamber of commerce. On January 2, 1947, Mr. and Mrs. Courtney owned certain real property. On said date the chamber of commerce agreed in writing to sell said real property (then owned by the Courtneys) to Dr. and Mrs. Canfield for $6,000; and the Canfields agreed in writing to buy the property for said sum. The sale was subject to restrictions, including one that the property was to be used exclusively for a community health service. The agreement was signed on behalf of the chamber of commerce by Dr. Canfield, as president, and by Mr. Courtney, as secretary. On March 24, 1947, the Courtneys conveyed the property to the chamber of commerce. On August 1, 1947, the Canfields filed an action for specific performance of the agreement of January 2d,· and named as defendants the San Fernando Valley Chamber of Commerce, Mr. and Mrs. Courtney, Fred C. Stillwell and Kenneth Gage. The Courtneys employed Fred C. Stillwell, who was then an attorney-at-law, to repre-

sent them in that action. He was employed on a contingent fee basis—that if the defendants prevailed in the action, they would thereafter sell the property, and Stillwell would receive 50 per cent of the profit realized from such sale. He filed an answer on behalf of all defendants. Thereafter, in September or October, 1947, he asked Mr. Hardy, an attorney-at-law and plaintiff herein, if he would represent the defendants in said action, and Mr. Hardy stated that he would do so for a fee of 25 per cent of the profit realized from a resale of the property. After October, 1947, plaintiff conducted the defense in said action. (Stillwell's license to practice law was suspended from September 15, 1948 to December 15, 1948.) The action was tried on October 4, 1948, and judgment was in favor of defendants—that is, specific performance was denied. Thereafter, the property was resold for $15,000.

Plaintiff testified that in his first talk with Stillwell regarding the case Stillwell said that he could not handle the case himself, and if plaintiff would take the case he would pay plaintiff one-half the amount Stillwell would receive under his contingent fee agreement; plaintiff stated that he would handle the case but he wanted it understood that the property would be placed on the market at the earliest opportunity and sold, and that his fee would be paid out of escrow and would be 25 per cent of the profit on the resale of the property over the amount due from Dr. Canfield on the purchase price; the amount due at that time was $4,867; plaintiff told Stillwell to talk the matter over with Mr. Courtney and, if he agreed, plaintiff would represent the defendants; plaintiff asked Stillwell if he had anything in writing about the fee, and Stillwell replied that he had or that it would be forthcoming. Plaintiff testified further that during their next discussion, in October, 1947, Stillwell told him that he had discussed the matter with Courtney and he had "agreed to it"; plaintiff asked Stillwell to bring the Courtneys to plaintiff's home; his reason for making the request was that he wanted personal assurance from the Courtneys that he would be paid by them out of escrow, because he did not want to take Stillwell's word for it; thereafter, in October, 1947, Stillwell and the Courtneys came to his home; plaintiff discussed the details of the case with Mr. Courtney, and then told him that he could not accept the case on the basis of being paid by Stillwell because Stillwell had too many creditors; plaintiff said, "Now, if I go into this thing, I

will take it over, but my fee must be paid out of the profits out of escrow, and the property must be put in escrow as soon as it can be done after the trial, if we win it''; he told Courtney that they would have to remove the restrictions and then sell the property; Mr. Courtney said that if they won the suit this would be done, and that plaintiff's fee of 25 per cent would be paid out of the profit resulting from the sale of the property; on October 16, 1947, a substitution of attorneys, substituting plaintiff and Stillwell as counsel for the chamber of commerce and the Courtneys, was signed by Courtney; a copy was sent to the Canfields' attorneys, and plaintiff gave the original document to Stillwell to file, but it was not filed; thereafter, plaintiff commenced preparations for the trial of the Canfield action, and he did not see the Courtneys again until a year later in September, 1948; on September 15, 1948, Stillwell showed plaintiff a document,[1] dated September 15, 1948 (which was signed by the Courtneys, purportedly on behalf of the chamber of commerce, and which recited that it was to confirm the verbal understanding ''as to consideration'' for Stillwell's services as attorney); after reading said document, plaintiff suggested that Stillwell draw an agreement with the chamber of commerce whereby the board of directors would also authorize Stillwell to appear as counsel. He testified further that he (plaintiff) had an agreement with Stillwell and the Courtneys, but the agreement ''was solely Mr. Stillwell's word''; that in order to

---

[1]''Sept. 15, 1948.

''Mr. Fred C. Stillwell,
 2600 Ramona Blvd.,
 Los Angeles.

''Dear Sir:

''This is to confirm our verbal understanding as to consideration for your services as attorney in obtaining repossession of the property sold under contract to Dr. Canfield at Reseda.

''It is understood that you will pay all expenses of the suit and may obtain associate counsel at your own expense.

''In return for said services and expense we agree that in the event you are successful in obtaining return of the said property that we will place the property up for sale and will give you one half of all monies received from the sale above the amount we would have received from Dr. Canfield if he had consummated the contract of sale he had with us.

''We further agree that the property may not be sold for less than Twelve Thousand Dollars unless all parties agree that that amount cannot be obtained.

''San Fernando Valley Chamber of Commerce
     By:  Bill Courtney, Secretary
     By:  Olive Courtney.

''Accepted
 Fred C. Stillwell.''

make sure that the Courtneys understood what was being done, plaintiff insisted that they come to his home—that he wanted them to come "so that there would be an agreement about my fee."

On September 28, 1948, the Courtneys and Stillwell came to plaintiff's home. Stillwell arrived first and typed two documents. One of those documents was a resolution by the board of directors of the chamber of commerce authorizing Stillwell to handle its interest in the action, and to obtain such legal assistance as may be required; further providing that his compensation shall be one-half the sale price of the property less the amount payable by Dr. Canfield; and further providing that "upon termination of the action" said board of directors would convey the property to the Courtneys. That resolution was signed at plaintiff's home by Stillwell, as president, and Mr. Courtney, as secretary. The other document was an agreement between Stillwell and the Courtneys, which provided that, in consideration of the agreement of Stillwell to handle all legal matters in connection with the action, the Courtneys agreed, upon receiving title to the property involved, to sign the papers necessary to remove the restrictions of record, to sell the property, upon Stillwell's request, for not less than $12,000, and that Stillwell be paid his fee out of escrow. The Courtneys signed that document at plaintiff's home at the request of Stillwell.

Plaintiff testified further that, after said documents were signed, he said that they were not satisfactory—that it was all right for Stillwell, but they did not mention plaintiff, and he wanted it definitely understood that if he won the case the property was to be sold, that he was to get 25 per cent out of escrow, and that he was not relying on Stillwell to pay him because Stillwell had too many creditors; plaintiff then said that he would not try the case until something definite was determined about his fee,—but if it was agreeable with defendants to try the case on those terms, he would try it; Courtney said, "All right"; Stillwell said that he would abandon one-half of his fee, and he told plaintiff he had agreed to that before. Plaintiff testified further that after plaintiff was in the case there was a new agreement between Stillwell and the Courtneys—that Stillwell waived one-half of his fee, which amount was to be paid to plaintiff, and Courtney and Stillwell agreed that said money was to be paid to plaintiff out of escrow.

Mrs. Courtney testified that the first time they went to plaintiff's home, he briefed them on the Canfield case, and nothing was said about fees of plaintiff or Stillwell; the second time they went there, they signed two documents (dated September 28th), because Stillwell advised them to do so, but nothing was said on that occasion regarding attorney's fees; she never had any conversation at any time with plaintiff concerning payment of fees to him; that no amount was paid to Stillwell after they turned the case over to him in August, 1947; after they won the Canfield case, plaintiff called a number of times on the telephone wanting to know whether the property had been put up for sale, and she advised him that everything was being done that could be done.

Mr. Courtney testified that he never had any agreement with plaintiff as to payment of attorney's fees directly to him; except for the written documents, he never authorized Stillwell to employ plaintiff; after his agreement with Stillwell in the Canfield action, he did not pay him any money for attorney's fees; plaintiff kept saying that he wanted the property sold; he told plaintiff the property was on the market and there was no objection to selling the property. He testified further that the fee was to go to Stillwell, and that was the intention of all concerned, until it was discovered that Stillwell was not a licensed attorney; right after Stillwell employed plaintiff, he advised them that half of his fee was to go to plaintiff and half to him; they replied that was up to him, according to the agreement.

During the taking of Stillwell's deposition, plaintiff and the attorney for defendants stipulated that a substitution of attorneys was signed on August 15, 1948. Stillwell testified in his deposition that before plaintiff went into the case, plaintiff said that he would not depend on getting his fee through Stillwell because there were too many judgments against him (Stillwell); at a later date, plaintiff told him that he would not have anything to do with the case unless he got his money direct from the Courtneys; he (Stillwell) repeated that to the Courtneys and they said it was all right with them; at plaintiff's home on September 28th, it was said that plaintiff would have to have "one-quarter on it [compensation] direct from them," and that he had nothing to do with the paper—and the Courtneys would put the property up for sale and the money would be paid from the sale of the property.

The court found, in part, that plaintiff "accepted such employment as attorney upon an agreement entered into by the

Plaintiff and Defendants, and each of them, providing that if the Defendants prevailed in said action Defendants would immediately remove certain restrictions of record upon the property involved in said action and would place the property on sale with real estate agents immediately after the trial and would pay to Plaintiff on account of plaintiff's fee therein from escrow upon such sale 25% of the amount realized from the sale thereof over and above the amount due the Courtneys from the Canfields in the event the Canfields had prevailed in said action, which amount was.$4867.00.''

■ Appellants contend in effect, as above indicated, that the evidence was insufficient to prove a contract between plaintiff and defendants. They argue that the agreement to pay attorney's fees was with Stillwell, that there was no agreement to pay a fee directly to plaintiff, and that the matter of a separate agreement with plaintiff to pay a fee to him did not arise until plaintiff discovered (after the present action was commenced) that Stillwell's license as an attorney had been suspended. They argue further in effect that it is not reasonable to believe that plaintiff would be insisting that Stillwell have a written contract with the Courtneys as to Stillwell's fee, and at the same time the plaintiff would make an oral contract with them as to his fee. Whether there was an oral agreement between plaintiff and defendants was a question of fact for the determination of the trial court. The finding, above quoted, that there was such an agreement is supported by the evidence.

■ Appellants contend further that there was no legal substitution of attorneys, and that Stillwell was the only attorney of record. It was alleged in the complaint herein that on October 16, 1947, the Courtneys signed a substitution of attorneys, substituting Stillwell and plaintiff as attorneys of record. The answer expressly admitted said allegation. There was evidence on behalf of plaintiff that the substitution was made but not filed. There was no evidence on behalf of defendants that it was not made. The counsel for defendants had stipulated, however, during the taking of Stillwell's deposition, that there was a substitution of attorneys signed on August 15, 1948. At the trial, counsel for defendants referred to the file in the action and stated that there was no record of any substitution of attorneys. Upon his request, he was then permitted to amend his answer to deny the allegation that the Courtneys had signed a substitution of attorneys. Plaintiff appeared at the trial as attorney for defendants, and

conducted the trial on their behalf and in their presence. He obtained a judgment in their favor and they accepted the benefits thereof. Under the circumstances, it is to be assumed that he was acting as their counsel with their consent, and therefore they are not in a position to rely on Stillwell's failure to file the substitution.

Appellants also contend that plaintiff is estopped to set up the oral agreement as a basis for this action. Their argument in support of this contention is to the effect that plaintiff relied upon Stillwell's written contract until he discovered, after this action was filed, that a recovery could not be had thereunder because Stillwell was not a licensed attorney. This contention is not sustainable. The court did not find that plaintiff relied upon Stillwell's oral agreement but did find that there was an oral agreement between plaintiff and defendants.

The judgment is affirmed, and the appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.