NUTTER ET AL. *v.* MAYOR & CITY COUNCIL OF BALTIMORE AND NON-PROFIT HOUSING COMPANY OF BALTIMORE, INC.

[No. 179, September Term, 1962.]

8

*Decided November 6, 1962.*

*Motion for reconsideration and rehearing filed November 30, 1962, denied December 3, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRES-
COTT, HORNEY and MARBURY, JJ.

*Douglas H. Gordon,* with whom was *C. Rider Brandau, Jr.,*
on the brief, for appellants.

*Arthur W. Sherwood* and *David Ross,* with whom were
*Ober, Williams, Grimes & Stinson* on the brief, for Non-
Profit Housing Co. of Baltimore, Inc., part of appellees.

Submitted on the brief by *Francis B. Burch, City Solicitor*
and *John A. Dewicki, Assistant City Solicitor,* for Mayor &
City Council of Baltimore, other appellees.

HAMMOND, J., delivered the opinion of the Court.

Various citizens who object to the erection of a fifteen-story
apartment house on the northeast corner of St. Paul and Monu-
ment Streets in Baltimore appealed to the Baltimore City Court
from a decision of the Board of Municipal and Zoning Appeals
(the Board), which on March 6, 1962, extended (for the
third time) the six months' period during which the permit
for a variance it had originally approved on September 28,
1960, could be obtained and proceeded under. The appellants
contended below, as they do here, that under the Baltimore
City Zoning Ordinance (the ordinance), codified as Article 40
of the Baltimore City Code of 1950, approval by the Board of
a variance or special exception must be availed of within six
months, that the Board has no right or power to extend the
effective life of its approval of a variance or special exception,
which it has previously approved, beyond the six months' pe-
riod, and that there is a statutory right of appeal to the Balti-
more City Court from an order of the Board purporting to
extend the life of a previously granted variance or special ex-
ception beyond the six months' period. These lead to their
ultimate contention that the Baltimore City Court erred in its
conclusions of law and in dismissing the appeal.

It appears that a civic group, interested in providing non-
profit housing for elderly people under the benefits of a new
Federal program, incorporated a company (hereinafter some-
times referred to as "Non-Profit") to build an apartment house
at the northeast corner of St. Paul and Monument Streets

especially designed to make living easier and more practicable for older citizens. On the first floor will be a lobby, dining room, infirmary and offices. The fourteen upper floors will contain two hundred ten apartments. Section 17A of the ordinance requires off-street parking facilities equal in number to 70% of the number of apartments. The sponsors of the project felt that because of the location of the property and the age and annual income of the proposed tenants, there would be no need for the statutory number of parking spaces, and their construction would impose practical difficulties and unnecessary hardship which would defeat the project and, consequently, applied for a variance.

After a hearing at which no protestants appeared, the Board approved the provision for a basement and sub-basement to house forty-seven cars, a height of 135 feet (3 feet more than authorized by the zoning ordinance), as well as an increase, beyond that usually allowed, in the area of the lot to be covered by the building, and a diminished rear yard. No appeal was taken from the Board's approval on September 28, 1960, of the application which had sought the variances.

After the thirty-day period for appeal had passed, Non-Profit proceeded with plans for the financing and construction of the project. While this was in progress it was informed by the Zoning Enforcement Officer that a building permit for the erection of the apartment house would have to be obtained within six months of the Board's decision. Non-Profit thereupon applied for, and on March 28, 1961, was granted by the Board, a six months' extension of the period of its approval of the application. Non-Profit was subjected to further unavoidable delay caused by the processing routines of the Federal Housing Administration and the necessity of obtaining passage of an ordinance by the Mayor and City Council assenting to the construction of parking facilities for more than three automobiles within three hundred feet of a church. The delay was compounded by active, widely-publicized opposition to passage of the ordinance by those who objected to the building of the apartment house at the lower end of Mt. Vernon Place. Non-Profit found it necessary to apply for further extensions and was granted by the Board two additional six

months' periods in which to obtain a building permit, the first on September 26, 1961, and the second on March 6, 1962, the latter, by its terms, to expire on September 28, 1962. On March 8, 1962, the day after the last extension was written in the records of the Board and almost eighteen months after the Board had approved Non-Profit's application, the appellants noted an appeal to the Baltimore City Court. They described their appeal as "one from the action of the Board * * * in Appeal No. 407-60 dated March 7, 1962, and the earlier orders of the said Board in the same Appeal purportedly revived thereby." The petition of appeal was almost entirely an attack on the validity of the grant of the original application and the relief prayed was the enjoining of the Building Inspection Engineer from issuing a building permit and Non-Profit from building the structure, and that "the application of the said defendants for permission to build the said apartment house be denied."

Non-Profit and the Mayor and City Council filed motions to dismiss the appeal. Non-Profit's motion relied on the claim that the appeal was in fact from the action of the Board in approving the original application on September 28, 1960, and had not been taken within the thirty-day period required by Maryland Rule B4. The Mayor and City Council relied not only on this ground but on the further point that Ordinance No. 1103, approved February 19, 1962, had permitted the construction, erection, conversion or addition "to a building on the northeast corner of St. Paul and Monument Streets" for the storage of more than three motor vehicles therein, that the applicant, under Section 44 of the Zoning Ordinance can apply for any permit, which has been approved theretofore by Ordinance No. 1103 within twelve months from the date of approval of said ordinance and that said ordinance "became part of the application" approved by the Board on September 28, 1960, with amendment on September 26, 1961, of an additional period ending March 28, 1962.

Judge Foster held that the appeal in fact and actuality was not from the extending of the period of life of the Board's approval of Non-Profit's original application from March 6, 1962, to September 28, 1962, but rather from the Board's action in

approving Non-Profit's application on September 28, 1960, and said: "Here also is the appeal untimely for it was not filed within thirty days of the action which constitutes the gravamen of the appeal."

Judge Foster then took up the contrasting and conflicting contentions of the parties as to the meaning of Sec. 44 of the ordinance. The first part of Sec. 44 provides that "whenever an application for a permit is approved under the provisions of this Article" by the Commissioner, the Board, or any court, "the permit shall be obtained and the privilege granted thereunder shall be exercised by the grantee therein named within twelve months from the date of the final action which made the permit valid" or the privilege and all rights granted shall become null and void.

The final part of Sec. 44 provides that permits obtained by reason of variance or special exception by the Board "shall be exercised by the grantee therein named within six months from the date of the final action which made the permit valid." [1]

The appellants contended before Judge Foster, and contend here, that a reading of Sec. 44 in its entirety makes it clear that the grantee of the privilege of a variance or special exception by the Board must obtain a building permit and exercise the rights conferred by it within six months of the final validating action, be it that of the Board, if there is no appeal to the Baltimore City Court, that of the City Court if there is no appeal to the Court of Appeals, or that of the Court of Appeals if the case goes there.

The appellees say that Sec. 44 imposes no time limit on the effective life of decisions of the Board approving variances or special exceptions and that the section's limitations apply only to the time within which a building permit must be exercised after it has been obtained—that is, that limitations begin to run on the date of the issuance of the permit, not on the date of the Board's approval of the application.

Judge Foster thought it clear "from a reading of the com-

---

1. Ordinance No. 1167, approved after the filing of the appeal below on April 23, 1962, has extended the six months' period in the final part of Sec. 44 to twelve months.

ponents of Section 44 that the position taken by the appellants is most logical and consistent with the evident purpose and intent of the section," but felt impelled to the contrary since "the Court of Appeals by way of dictum in *Mayor & City Council v. Shapiro,* 187 Md. 623, has indicated that the position taken by the respondents is proper." He felt, to use his words, that the view of this Court was "that the time limitations provided in Section 44 run from the time of *issuance* of the permit, and not from the date of the Board's resolution approving the application for the permit."

Judge Foster found, however, that even if Sec. 44 be read as the appellants read it, and as he tended to do, unless constrained otherwise by the Court of Appeals, it did not follow that the Board's approval of Non-Profit's original application on September 28, 1960, no longer was in force and effect to authorize the issuance of a building permit. Judge Foster recognized that the Board, as a creature of statute, has no power, right or duty other than those expressly conferred by statute and those necessarily implicitly flowing from authority expressly given. On this premise he interpreted Sec. 35 (g) 3 of the ordinance (which gives the Board the power "to authorize upon appeal in specific cases such variance from the terms of this Article as is necesary to avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done") as giving the Board the power and right to grant the three extensions it gave to the life of the approval it had given originally to Non-Profit's application. He said:

"In my opinion the Board, in this case, had the power to vary the terms of the ordinance by granting the time extensions as it did; and the power was properly exercised under the circumstances here presented. * * * the record clearly shows that the delay in securing the permit was based upon the necessity of obtaining F. H. A. approval of the mortgage loan application * * * plus the necessity of obtaining passage of an ordinance by the City Council. * * * Common knowledge and experience discloses it is frequently impossible to complete all steps necessary in

the development of a large building project within the restricted period of time. I cannot believe it was the intention of the framers of the ordinance to impose impossible conditions on builders or fetter the Board with an arbitrary and unchangeable time limitation which the Board would be without power to extend in any case. * * * Great difficulty could only result from a hard and fast rule denying the Board power to act as it has and which power the Board has been exercising for many years. Many cases have shown that Maryland adheres to the doctrine that long established practice and procedures on the part of administrative agencies are not to be disregarded except for the most compelling urgent reasons * * *."

Judge Foster said that since the Board had the right to grant the variances and no change in conditions had been shown between the original approval of September 28, 1960, and the granting of the third extension of March 6, 1962, and since the appellants knew or were chargeable with knowledge of the six months' limitation as to approvals of variances or special exceptions set by the final part of Sec. 44 and had shown no prejudice, no notice of the consideration by or of the granting of the extensions by the Board had to be given, as a matter of law.

We think that Judge Foster's reasoning and conclusions were essentially sound.

Maryland Rule B 4 a provides that an appeal from a decision of the Board shall be taken within thirty days of the action appealed from, except that if the agency involved is required by law to send out notice of its action the order of appeal shall be filed within thirty days from the date such notice is sent. *Aberle v. Baltimore City,* 228 Md. 542, held that the Board was required to send notice of its actions, and, therefore, the time for appeal in Baltimore was thirty days from the date the notice is sent. It is conceded that no appeal from the Board's action of September 28, 1960, was taken or attempted to be taken until almost eighteen months later, on March 8, 1962. We hold that no appeal which is taken or attempted to be taken from a decision or action of the Board

more than thirty days from the date notice of the decision or action is sent out is timely, and that an appeal or attempted appeal from subsequent action of the Board, even though related to the original action sought to be reviewed, will lie only as to the validity of the subsequent action and not relate or reach back to the original action. *Maryland Clothing Manufacturing, Inc. v. Baltimore,* 207 Md. 165; *Fleischer v. Murdock,* 62 N. Y. S. 2d 417; *In re Hempstead,* 280 N. Y. S. 448.

The language of Sec. 44 leaves little doubt, in our view, that the period of limitations for both the obtention of a building permit or a certificate of occupancy and the exercise of the rights and privileges approved by the Board and granted by the permit or certificate runs from the date of the final action which allowed the valid issuance of the permit or certificate, either by the Zoning Commissioner if there was no appeal to the Board, or by approval of issuance by the Board, if there is no appeal to the City Court, or by that Court if there is no appeal to this Court, or by this Court if the final action is here. To the extent that *Mayor and City Council of Baltimore v. Shapiro, supra,* indicates a contrary view in the use of the following language at page 631 of 187 Md., "In the case at bar the question at issue before the Board, and before the court on appeal, related to the exercise of the permit within the time prescribed by paragraph 39 [now Sec. 44] of the Ordinance, *i.e.,* within twelve months from the date of issuance, July 2, 1941," it is not to be followed. In *Shapiro,* the Board had approved the application on July 1, 1941, and entered the written record of its action on July 2, the day the certificate of occupancy for vacant land was issued pursuant to the Board's approval. Under the facts it made no difference whether the twelve-month period ran from July 1 or July 2. This Court found the real issue to be whether a claimed use of the land involved existed at the time of the amendment of the ordinance, and not whether it had been abandoned and revived during the critical twelve-month period.

We agree with Judge Foster that Sec. 35 (g) 3 of the ordinance, which gives power to the Board upon appeal in specific cases to vary the terms of the ordinance, authorizes the grant-

ing, in proper cases, of extensions of time for the exercise of privileges previously officially granted by the Board. The general standards prescribed by the section seem adequate to guide the Board in determining the propriety of an extension of an approval it has already judged by the more detailed standards referred to in Sec. 35 (g) 3.

We think the provision of Sec. 40 of the ordinance, that any person aggrieved "by any decision" of the Board may present to the Baltimore City Court a petition of appeal setting forth the grounds of illegality of the action complained of, reveals an intent that there is to be a right of appeal to one aggrieved by the decision of the Board to extend the time during which the Board's approval of a privilege may be exercised. Such extensions well may involve matters and questions of important significance, and the determination of them by the Board should be subject to judicial review. The review, however, is limited to the propriety of the Board's decision and action in making the particular extension timely appealed from, not prior decisions and actions not appealed from within the prescribed time.

Although Judge Foster dismissed appellants' appeal, he actually passed on the propriety of the Board's extension of March 6, 1962. For the reasons he gave, which have been summarized above, we think his findings that (a) "the power was properly exercised under the circumstances here presented," and (b) that there was no prejudice to the appellants in the Board making the extensions without notice or hearings, were justified by the record. See *Fleischer v. Murdock, supra; Scarpati v. Feriola,* 186 N. Y. S. 2d 927, appeal dismissed, 7 N. Y. 2d 724, 162 N. E. 2d 642; *Walker v. Talbot County,* 208 Md. 72, 84.

The appellants in their petition of appeal alleged that the zoning change sign posted on the property prior to the original hearing before the Board gave notice only that the approval sought would be for fewer parking spaces than the usually required seventy per cent of the number of apartments, and did not warn of the increased height, additional coverage of the lot and restricted back yard. The petition further alleged that the

granting of the variances as to the three latter requirements was "a flagrant violation of the Zoning Ordinance."

This point was not pressed below and was not decided or even commented upon by Judge Foster. It was mentioned briefly in passing in the statement of facts in appellants' brief but was not presented as a question nor argued in the brief. Under Maryland Rules 885, 831, 831 c 2, 831 c 4, and *Comptroller v. Aerial Products,* 210 Md. 627, 644-645; *Gray v. State,* 219 Md. 557; *Mullan v. Mullan,* 222 Md. 503; *Baxter v. State,* 223 Md. 495, 502, the point is not before us for decision.

Judge Foster dismissed the appeals. This was correct as to those attempted to be taken from the Board's orders of September 28, 1960, March 28, 1961, and September 26, 1961, which were not filed in proper time, but since appellants had a right to appeal from the order of March 6, 1962, and noted an appeal in due time, the Board should have been affirmed in that appeal. The effective life of the extension granted by the Board on March 6, 1962, will, of course, run for a period of six months from the date of the mandate of this Court.

> *Order and judgment dismissing appeals from orders of the Board of Municipal and Zoning Appeals of Baltimore of September 28, 1960, March 28, 1961, and September 26, 1961, affirmed; order and judgment dismissing appeal from the order of that Board dated March 6, 1962, reversed and order entered hereby affirming the decision and order of the Board of March 6, 1962; costs shall be paid by appellants.*