SKIPJACK COVE MARINA, INC. *v.* COUNTY
COMMISSIONERS FOR CECIL
COUNTY, ET AL.

[No. 66, September Term, 1968.]

*Decided February 14, 1969.*

442

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Leonard E. Wilson* for appellant.

*Edwin B. Fockler, III* for County Commissioners of Cecil County, appellee, and *Kenneth A. Wilcox* for Samuel F. du-Pont, Joanne duPont, his wife, and Kenneth Company, Inc. other appellees.

BARNES, J., delivered the opinion of the Court.

The appellant, Skipjack Cove Marina, Inc. (Skipjack or applicant) has appealed from an order of the Circuit Court for Cecil County (Rollins, J.) affirming an order of the Board of Zoning Appeals of Cecil County (the Board) declining to remove certain restrictions and conditions previously imposed by the Board upon Skipjack's predecessors in title, James H. Parcher (president of Skipjack and a part owner of Skipjack) and Jean Walton Parcher, his wife (the Parchers), pursuant to the granting of a special exception to operate a marina on a 24.66 acre tract of land on the north side of the Sassafras River in Fredericktown in the First Election District of Cecil County (the subject property), in a Shoreline Residential Recreational Zone. We have concluded that the trial court's action was correct and will affirm its order.

The Parchers purchased the subject property on August 30, 1963 and on October 30, 1963 made application to the Board to operate a marina and to locate the following improvements, among others:

1. A "T" dock extending approximately 303 feet south from the shore, with a leg of the "T" extending westerly, parallel to the shoreline, for approximately 364 feet.

2. Refueling facilities.

3. Storage and parking facilities.

4. Ramp and lift facilities.

All of the proposed improvements, as well as the location of the subject property and the neighboring properties were shown on applicant's Exhibit #3 filed in the proceedings.

The subject property is bounded on the north and west by the lands of the Kennett Company, Inc., on the north and east by the lands of Harry Rudnick & Sons, on the east and south by the lands of the Duffy's Creek Marina and Robert Green, and the Sassafras River. The subject property was served by two rights-of-way, one of which was 50 feet wide across the Rudnick lands to Maryland Route 213. In the Fredericktown area and within a mile of the subject property there were five other marina-type facilities, all established prior to the Cecil County Zoning Ordinance. Three of the five marina-type facilities, the Sassafras Boat Company, the Granary and Duffy's Creek Marina are on the Cecil County side of the Sassafras River. Although, as indicated, the proposed marina of the Parchers abuts the Duffy's Creek Marina property on the south, it is approximately 1500 feet distant from it as measured along the shore line, the two properties being separated by the nine acre Green property which is roughly triangular in shape with the long leg of the triangle fronting on the river.

Applicant's Exhibit #3, to which reference has already been made, showed various areas on it designated by letters. The important areas thus marked, for the purposes of this appeal were—

"A", the area on which the existing house (and owner's residence) was located.

"B", a wooded area lying to the north of Area "A" and marked: "Wooded area reserved for owners residential use." Although the areas have never been surveyed and precisely calculated in regard to acreage, it is estimated that the Areas "A" and "B", together, contain approximately four acres.

"M" is a triangular area north of Area "A" designated as "orchard and area for residential use," there being a cottage already located in Area "M". This area lies between what was then the H. Dalton Wood property (later purchased by the

Kennett Company and Samuel duPont) on the northwest and the Rudnick property on the east.

"N" is a wooded park area lying generally to the east of the cleared area for dry storage and parking, to the north of the Green and Duffy properties and to the south of the Rudnick property. It is estimated that Areas "M" and "N", together, contain approximately ten acres.

There was substantial evidence before the Board at the hearing on the Parcher application indicating a need for additional marina facilities and the Board concluded that it was authorized under the Cecil County Zoning Ordinance to grant the Parchers a special exception to operate the type of marina for which application was made, subject, however, to the following rather unusual conditions, as conditions precedent to the granting of the special exception:

1. The Parchers would execute and record among the Land Records of Cecil County an option agreement for the benefit of the owners of the Green property, their heirs, successors and assigns, to enable them to utilize in common with the Parchers, at any time within the next 20 years, the 50 foot right-of-way to be constructed by the Parchers, for the purpose of the operation of a marina only, on the Green property (a) upon payment to the Parchers of one-half of the initial cost of the Parchers' right-of-way, plus one-half of all maintenance thereon dating from the date of the acceptance of the option, and (b) such option must include an additional grant of a 50 foot strip from the right-of-way above mentioned to the Green property as shown on applicant's Exhibit #3 in order to allow users of the Green property free and uninhibited ingress and egress to Maryland Route 213, the construction and maintenance of such additional right-of-way, however, to be borne entirely by the owners of the Green property; [1] and,

---

1. In the Board's opinion, filed January 3, 1964, rendered in regard to the Parchers' application, the Board indicated its concern with the effect of granting the special exception on the Green property because it would then be "completely surrounded by marina activities," and with certain right-of-way restrictions, presented a situation in regard to the Green property, which the Board thought was "palpably unfair."

2. The forested areas indicated on applicant's Exhibit #3 as "A", "B", "M" and "N" be preserved "as they now exist" except that Areas "A" and "B" may be utilized for appropriate residential areas by the owners and Area "N" to the north of the projected 50 foot right-of-way may be utilized as a park area, provided the trees thereon are allowed to remain and only the underbrush be cleared.

The Kennett Company and John P. Green, trustee, filed an appeal from this decision of the Board, but the Parchers did not appeal. By agreement between the Kennett Company, Green, trustee, and the Parchers, the appeal was dismissed. It was conceded at the argument that an option agreement in accordance with Condition No. 1, *supra,* was executed by the Parchers and was duly recorded among the Land Records of Cecil County.

We now turn to the relevant provisions of the Zoning Ordinance of Cecil County in force at the time of the granting of the Parcher special exception, which, unfortunately, are not models of clarity.

Section 5 of the Zoning Ordinance, Subsection 4, contains the provisions in regard to the Shoreline Recreational-Residential Zone. It provides in relevant part, as follows:

"This zone contains recreational uses peculiarly suited to shorelines, as well as residential uses. The zone is meant to provide primarily for uses of recreational character, including some commercial recreation and seasonal dwellings. Permanent dwellings are permitted as a secondary use.

a. The following uses are permitted:

\* \* \*

(4) public, private, and commercial bathing beaches, bath houses, boat landings and wharves, *marinas,* fishing equipment and bait stores, and similar uses offering only goods and services commonly used for water-recreational purposes, except such structures and uses shall not be located nearer than one hundred (100) feet to any existing summer home, cabin or residence;

\* \* \*

b. The following uses are permitted as special ex-

ceptions after approval by the Board of Appeals, which must determine the following conditions to be fulfilled:

    a) such commercial uses are grouped as much as possible in definite centers;

    b) *existing development is protected from undue encroachment and harmful effects from such uses by such safeguards as the Board of Appeals may provide,* * * *.

    c) a definite need for such uses in the location proposed is shown to exist.
    * * *

    (5) *business catering to marine activities* such as *commercial boat docks, boat service areas, marine equipment stores, boat storage* and construction yards, bait and tackle shops, retail fish and shellfish sales; * * *." (Emphasis supplied.)

Section 9, in regard to the powers and duties of the Board, provides, in part:

    "The Board of Appeals shall have the following powers and duties:
    * * *

    2. *Special Exceptions: Conditions Governing Applications: Procedures*—To hear and decide only such special exceptions as the Board of Appeals is specifically authorized to pass on by the terms of this ordinance; to decide such questions as are involved in determining whether special exceptions should be granted and to grant special exceptions *with such conditions and safeguards as are appropriate under this ordinance,* or to deny special exceptions when not in harmony with the purpose and intent of this ordinance. * * *

    "In granting any special exception, the Board of Appeals may prescribe *appropriate conditions and safeguards in conformity with this ordinance.* Violation of such conditions and safeguards when made a part of the terms under which the special exception is granted, shall be deemed a violation of this ordinance and pun-

ishable under Section 16 of this ordinance. * * *."
(Emphasis supplied.)

In Section 18, containing definitions, a special exception is defined as follows:

> "A special exception is a use that would not be appropriate generally *or without restriction* throughout the zone, but which, *if controlled* as to number, area, location, or *relation to the neighborhood,* would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare. Such uses may be permitted in such zone as special exceptions, if specific provisions for such special exceptions is made in this zoning ordinance."
> (Emphasis supplied.)

It can readily be seen that in view of the provision of Section 5, Subsection 4. a. (4) which *permits marinas* and the provision of Subsection 4. b. (5) requiring the granting of a special exception for businesses catering to marine activities such as commercial boat docks, boat service areas, marine equipment stores and boat storage, confusion may well arise in regard to an application for a use generally referred to as a "marina" but which contains the uses referred to in Subsection 4. b. (5).

The Parchers raised the point in their application that the use for which application was made was a "marina" *permitted* under Subsection 4. a. (4), but the Board, after considering the matter, concluded that the application required a special exception under the language of Subsection 4. b. (5), stating in its opinion, filed January 3, 1964:

> "While the Board is not inclined, at this point, to comment upon what uses may be encompassed as a matter of right under 4, a, (4), suffice it to say that in the Board's opinion the facts of the present case are such as to remove it completely from consideration thereunder. Consequently, the case is brought squarely within the provisions of Paragraph b, Subsection 4 of Section 5 governing special exceptions in Shoreline

Recreational Residential zone, and it will be considered under the provisions of this Section."

Subsequent to the granting of the special exception to the
Parchers, subject to the conditions mentioned, the subject property was transferred to the appellant corporation, Skipjack, of
which Mr. Parcher is president and a part owner, as above indicated.

On July 7, 1967, Skipjack filed an application which would
modify the conditions required by the Board to the granting
of the special exception in 1964 so that Skipjack could be permitted to locate a swimming pool of the Olympic size, which
would accommodate approximately 300 memberships, and club
house in Area "B", a putting green and tennis court in Area
"N" and a storage space for cradles and other marina paraphernalia in Area "M". Skipjack contended that certain changes
had occurred since the granting of the special exception in 1964
which justified the modification of the original conditions and
the granting of permission to erect and operate the new proposed improvements. The Planning Commission for Cecil
County approved the granting of Skipjack's application.

The Board, after hearing testimony and argument on the
Skipjack application filed an opinion on September 19, 1967
denying the application. The Board found from the evidence
that certain changes had occurred since the granting of the special exception in 1964 as follows :

1. A substantial revision of the applicant's southeastern property line bordering the Green property.

2. A revision of the applicant's westerly property line.

3. A revision of access right-of-ways as called for in the
Board's original opinion and with no right-of-way through the
duPont property.

4. The use of a previous residence on the adjoining property
as a some-time office.

The Board, however, was of the opinion that the Skipjack application should be denied, stating in its opinion :

"The Board felt at the time of the granting of the
initial special exception that these conditions were appropriate, and necessary, for the protection of the sur

rounding area and the community should the special exception be granted. Without these conditions, the special exception would not have been granted, and the Board does not feel that the applicant has at this time submitted sufficient evidence to justify * * * a modification of the initial conditions."

The Board also recited that notwithstanding the recommendation of the Planning Commission to the contrary, it would deny the Skipjack application.

Skipjack appealed to the Circuit Court for Cecil County. That court, on March 1, 1968, filed a carefully considered opinion indicating that the Circuit Court would affirm the Board. The appeal in the present case is from an order passed by the Circuit Court in accordance with its opinion.

Skipjack raises two principal questions before us :

1. Did the trial court err in affirming the decision of the Board that a special exception was necessary?

2. Was the Board's action in refusing to modify the conditions, arbitrary, capricious and illegal? [2]

We are of the opinion that both of these questions must be answered in the negative.

## 1.

The question of whether or not a special exception was required for the use as requested by the Parchers and granted by the Board was specifically decided adversely to Skipjack's present contention by the Board in its original decision on the Parcher application. No appeal was taken from that decision of the Board so that it became final after the 30 day period provided by Maryland Rule B4 had expired, and is subject to challenge only for fraud, surprise or some other factor directly affecting the validity, *vel non,* of the decision. There were no allegations that such conditions existed. On the contrary, the Parchers did not appeal the original decision, but obtained by

---

2. Skipjack raised a third question in regard to its "standing" to request a modification of the conditions imposed upon the granting of the original special exception. The appellees, however, concede that it had "standing" to present its application, so that we need not consider this question further in this opinion.

agreement a dismissal of the appeal taken by the protestants, and proceeded to execute and record the option agreement required by Condition No. 1. Skipjack, as subsequent purchaser of the subject property from the Parchers has taken subject to the prior decision of the Board, and by accepting the benefits and advantages of the special exception, subject to the conditions, cannot now be heard to attack the validity of the conditions upon which its rights to the special exception were expressly predicated by the Board. *Zweifel Manufacturing Corp. v. City of Peoria*, 11 Ill. 2d 489, 144 N.E.2d 593 (1957).

In *Zweifel,* the applicant had received a variance with certain conditions on June 10, 1953. Later the applicant filed a proceeding to declare invalid the conditions originally imposed.

Chief Justice Klingbiel, for the Supreme Court of Illinois, stated:

> "Plaintiffs did not pursue their remedy for review under the Administrative Review Act, but instead accepted the benefits granted to them by the terms of the variations. They now assert that the portions of the orders which granted the benefit of variations are valid, but that the portions imposing the conditions are void. Such a position cannot be sustained. A party who has accepted and retained the advantages of an order cannot be heard to attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated. (citing cases) By accepting the advantages of the variation they have waived whatever error may have existed in imposing the conditions upon which the variation was granted."
> (11 Ill. 2d at 493-94, 144 N.E.2d at 595.)

Cf. *Charles Simons Sons Co. v. Maryland Tel. & Tel. Co.,* 99 Md. 141, 57 A. 193 (1904), in which our predecessors held that when a public utility company accepted a franchise to use the streets of a municipality under an ordinance establishing certain rates as a condition of the franchise, the company could not thereafter challenge the reasonableness of the rates set forth in the ordinance.

See *Federal Power Commission v. Colorado Interstate Gas*

*Co.,* 348 U. S. 492, 75 S. Ct. 467, 99 L. Ed. 583 (1955); *Shepherd v. Kerr,* 239 Ark. 901, 395 S.W.2d 11 (1965); *State, ex rel. Wilson v. Lowdermilk,* 245 Ind. 93, 195 N.E.2d 476 (1964); *Skelly Oil Co. v. Dist. Court of Pittsburg County,* 401 P. 2d 526 (Okl. 1964); *Svatonsky v. Svatonsky,* 63 Wash. 2d 902, 389 P. 2d 663 (1964); *Rowe v. Dixon,* 31 Wash. 2d 173, 196 P. 2d 327 (1948); *Hardy v. San Fernando Val. Chamber of Commerce,* 119 Cal.App.2d 523, 259 P. 2d 728 (Dist. Ct. of App. 1953); and, *Ozdoba Realty Corp. v. Goldberg,* 133 N.Y.S.2d 598 (Sup. Ct. Spec. Term. N.Y. Co. 1954). See also 31 C.J.S. *Estoppel* § 110(7) at 577 and § 110(8) at 580 (1964).

See also our decision in *Montgomery County v. Mossburg,* 228 Md. 555, 180 A. 2d 851, 99 A.L.R.2d 222 (1962) in which the Board of Appeals for Montgomery County granted Mossburg a special exception to expand his existing non-conforming restaurant use with a light wine and beer license, by building and using additional kitchen and dining room facilities, thus allowing him to serve 50 patrons at a time. The neighboring property owners protested, citing the littering of beer bottles, late noises in the area, spinning tires and running motors in the restaurant's parking lot as some of the grounds of their objection. The Board in *Mossburg* granted the special exception subject to various conditions including appropriate landscaping, no band or other live performances, keeping the property free of litter, and that the establishment be closed every night and the parking lot cleared by 11:15 p.m. with a chain placed across each entrance to the parking lot. Mossburg appealed to the Circuit Court for Montgomery County, which reversed the Board. The order of the Circuit Court for Montgomery County was, however, reversed by this Court. Judge (now Chief Judge) Hammond, for this Court, stated:

"The Board did not purport to restrict or deal with the liquor license as such. It did no more than offer Mossburg the opportunity to expand his business as he desired, provided he did not, after eleven o'clock, exercise the privilege granted by his alcoholic beverage license to sell wine or beer or by his restaurant license

to sell food. * * * He may not, we think, as of right demand an unconditional special exception. If he decides to accept a conditioned exception, it would appear that he would not thereafter be in a position to challenge the conditions, although we need not now decide the point. Compare *Zweifel Manufacturing Corp. v. City of Peoria,* 144 N.E.2d 593 (Ill.), * * *. * * *

"The conditions attached to the special exception in the present case were valid, and Mossburg must either accept the exception as tendered or be limited to the original nonconforming use." (228 Md. at 560-61, 180 A. 2d at 854, 99 A.L.R.2d at 226.)

Skipjack's predecessors in title, like Mossburg, had the option to appeal the original decision of the Board, or to accept the special exception with its conditions. They deliberately chose to avail themselves of the latter option and Skipjack cannot challenge the validity of the conditions.

Then too, it is clear that Skipjack cannot, by filing a proceeding subsequent to the 30 day period provided for an appeal by Maryland Rule B4, in effect, seek to obtain a belated appeal challenging the decision of the Board that Skipjack's predecessors in title, the Parchers, were required to have a special exception and were not entitled under the ordinance to use the subject property for the uses applied for by them as a matter of right. See *Nutter v. Mayor and City Council of Baltimore,* 230 Md. 6, 185 A. 2d 360 (1962).

2.

Skipjack earnestly contends that, in any event, the Board, after finding that the changes already mentioned, had occurred since the grant of the special exception with conditions in 1964, acted arbitrarily, capriciously and illegally in declining to modify the original conditions and permit it to expand as it requested in its application. We do not agree.

Skipjack is correct in observing that if there had been a significant change in conditions since the granting of the special exception in 1964, the Board may grant a special exception with modified conditions. See *Whittle v. Board of Zoning Appeals,*

211 Md. 36, 125 A. 2d 41 (1956) in which Chief Judge Brune, for the Court, stated:

> "The general rule, where the question has arisen, seems to be that after the lapse of such time as may be specified by the ordinance, a zoning appeals board may consider and act upon a new application for a special permit previously denied, but that it may properly grant such a permit only if there has been a substantial change in conditions." (211 Md. at 45, 125 A. 2d at 46.)

See also Rathkopf, *The Law of Zoning and Planning,* §§ 69-2, 69-3 and 69-4. (3rd Ed. 1967)

We have held, however, that although a change in conditions *may justify* a Board in reaching a different result from the one reached on an earlier different set of facts, the mere fact that changes have occurred *do not require* the Board to grant the new relief requested in the application. *Franklin Construction Co. v. Welch,* 251 Md. 715, 248 A. 2d 639, 644 (1968) ; *Agneslane, Inc. v. Lucas,* 247 Md. 612, 620, 233 A. 2d 757, 761 (1967) ; *Furnace Branch Land Co. v. Board of County Comm'rs,* 232 Md. 536, 539, 194 A. 2d 640, 642 (1963).

The question then is whether the refusal of the Board to grant the requested relief is arbitrary, unreasonable or capricious, or results in a taking of private property for public use and without the payment of just compensation. See *Franklin Construction Co. v. Welch, supra; Montgomery County Council v. Shiental,* 249 Md. 194, 198-99, 238 A. 2d 912, 914-15 (1968) ; *Sampson Brothers (Md.), Inc. v. Board of County Comm'rs,* 240 Md. 116, 119-20, 213 A. 2d 289, 291 (1965) ; *Agneslane, Inc. v. Lucas, supra* and *County Council for Montgomery County v. Gendleman,* 227 Md. 491, 498, 177 A. 2d 687, 690 (1962).

There is no contention that the Board's action in the present case is invalid because of the second alternative and clearly under our decisions there is no deprivation of *all* reasonable use of the Skipjack property under the existing zoning. See *Franklin Construction Co. v. Welch, supra; Tauber v. Montgomery County Council,* 244 Md. 332, 337, 223 A. 2d 615, 618 (1966)

and *Mayor and City Council of Baltimore v. Borinsky*, 239 Md. 611, 622, 212 A. 2d 508, 514 (1965).

If the question before the Board were fairly debatable, then its action will not be held by us to be arbitrary, unreasonable and capricious and we will not substitute our judgment on the issue in the place of the Board's decision. As we said in *Finney v. Halle*, 241 Md. 224, 216 A. 2d 530 (1966) :

> "We have said many times that it is not the function of the Courts 'to zone or rezone,' and it is vital to the public interest that this declaration by us be strictly applied; otherwise we will, in effect, substitute our judgment for that of the Board and this we may not do. It is only when the determination of the Board is not 'fairly debatable' that we will hold that its action is unreasonable, arbitrary and capricious. (Citing a number of prior Maryland cases)" (241 Md. at 236-37, 216 A. 2d at 536).

As the trial court observed in its opinion, "the substantial changes claimed by the appellant are mainly the result of compliance with the conditions and restrictions originally set forth as conditions precedent to the granting of the special exception." There was evidence indicating that the use of the storage area for storing cradles was particularly objectionable, that such cradle storage area "becomes a dump, it also becomes a place that engine blocks, parts, etc., are dumped off * * *." The evidence also suggests that, contrary to the more unusual situation in which the Board "changes its mind," [3] the present case is one in which the property owner—most likely because of a change in current business conditions—"changed his mind" and no longer finds desirable the original conditions by which the original special exception was obtained and in regard to which there was complete acquiescence, refusal to appeal and affirma-

---

3. See *Schultze v. Montgomery County Planning Board*, 230 Md. 76, 185 A. 2d 502 (1962) and *Kay Constr. Co. v. County Council*, 227 Md. 479, 177 A. 2d 694 (1962). See also *Woodlawn Area Cit. Ass'n, Inc. v. Board of County Comm'rs*, 241 Md. 187, 194-95, 216 A. 2d 149, 154 (1966) and *Mettee v. County Comm.*, 212 Md. 357, 366, 129 A. 2d 136, 141 (1957).

tive performance of one of the requirements of the conditions. In our opinion, the refusal of Skipjack's application was fairly debatable and we will not disturb the Board's decision or reverse the trial court's order affirming that decision.

*Order affirmed, the appellant to pay the costs.*