LAYTON *v.* PETRICK ET UX.

[No. 151, September Term, 1975.]

*Decided April 9, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■O'DONNELL, JJ.

*Stephen A. Tarrant* for appellant.

*Clarke Murphy, Jr.*, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This litigation, which evolved from an attempted assignment of a lease, has been pending in the Circuit Court for Harford County since November, 1971, and is making its second visit to this Court.

The factual background which gave rise to the litigation is simple. Paul J. Petrick and Margaret Petrick, his wife, (the

Petricks) are the owners of a 37.166-acre tract near Joppa, Maryland. Approximately 1.72 acres of the tract were occupied by Evershield Products, Inc. (Evershield), substantially all of the stock of which was owned by the Petricks. On 3 October 1969, as an incident to the acquisition of the stock of Evershield by Micamatix Corporation (Micamatix), the Petricks entered into an indenture of lease with Evershield, which purported to lease to Evershield a parcel 500 feet by 150 feet, improved by an office and machine shop then occupied by Evershield.[1] The lease was for an original term of 40 years, with an option to renew for an additional term of 59 years. The rent reserved for the original term was $3,300.00 per year, net of all property expenses, which were deemed to be additional rent for the purposes of the lease; for the first five years of the renewal term, rent was fixed at 6% per annum of the appraised value of the land subject to the lease; for the next five years, at 7%, and then for the balance of the renewal term, at 8%, in each case again net of all property expenses. Although forms of acknowledgment had been appended to the lease for the Petricks and Evershield, these forms were never completed. The lease was not recorded until May, 1971.

In that month, some 17 months after the execution of the lease, Evershield and Micamatix [2] joined in an assignment of all their interest in the lease to Robert P. Layton, a member of the New York bar, as additional security for the payment of a note evidencing a loan of $30,000.00 made by Layton to Evershield. The assignment gave Layton the right to possession in the event of a default in the performance of the covenants of the lease or in the performance of the provisions of the loan agreement or other security instruments. The assignment was executed in behalf of

---

1. There was some uncertainty about the description inserted in the lease which is not pertinent to this discussion, since there was apparently a mistake in the courses first inserted which was later corrected. Layton later filed in support of his memorandum of law a perimeter survey which had been prepared in December, 1970, at the instance of Micamatix.

2. There is nothing in the record which suggests that the lease was ever assigned by Evershield to Micamatix.

Evershield and Micamatix, but was not acknowledged by either of them.

Commencing in August, 1971, and continuing until February, 1972, Layton paid rent to the Petricks. There was testimony that payments of $1,850.00, and $131.00 in court costs, were made to obtain dismissal of an ejectment action brought by the Petricks. The record does not reveal against whom the action was instituted. Payments of rent ceased apparently in accordance with the terms of an oral stipulation between the Petricks and Layton pending disposition of the action for specific performance brought by Layton against the Petricks.

In November, 1971, as a result of a default in the payment of the Evershield note, Layton filed a bill of complaint in the Circuit Court for Harford County against the Petricks seeking specific performance of the lease of which he was the assignee and an ex parte injunction restraining the Petricks from entering the leased premises. The injunction issued, pending negotiations.

After several months of preliminary sparring, the Petricks filed an answer to the bill of complaint and a motion for summary judgment, both of which were largely grounded on the point that the 1969 lease, being for a term of more than seven years, was required to be recorded by Maryland Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.) Art. 21, § 1 (a); and that since it had not been acknowledged, Code (1957, 1966 Repl. Vol.) Art. 21, § 12, it could not be recorded, see *Clarke v. Brunk*, 189 Md. 353, 360, 55 A. 2d 919, 922, (1948). After a hearing, the motion for summary judgment was granted, but no written order was entered by the chancellor. An appeal was taken to this Court which we dismissed on 6 February 1973, relying upon *Kennedy v. Foley*, 240 Md. 615, 214 A. 2d 815 (1965).

When the case returned to the trial court, Layton countered with a motion for reargument which was followed by the Petricks' motion ne recipiatur and motion to strike. On 22 August 1973, the motion for summary judgment was denied. A series of delays followed at the request of both parties, and an evidentiary hearing was eventually held on

the bill of complaint and answer on 16 April 1975. From an order dismissing the bill for specific performance, Layton appealed to the Court of Special Appeals. We granted certiorari before the case was heard by that court.

We think the chancellor was pertially correct when he applied the recordation statute which was in effect in 1969, when the lease was executed. At that time, Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.) Art. 21, § 1 (a) provided:

> "No . . . estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded as herein provided; . . . and provided, further, that whenever a lease or sublease to which this section shall apply has been executed, but has not been acknowledged or recorded . . . as herein provided, *such lease or sublease shall, notwithstanding the provisions of this section, be valid and binding, and of full force and effect both at law and in equity, between the original parties to such lease. . . .*" (emphasis supplied).

It was his interpretation of the effect of the statute which must be reexamined, however.

The chancellor found as a fact that neither the lease nor the assignment had been acknowledged at the time of execution; that inexplicably, an unacknowledged copy of the lease had been caused to be recorded among the land records of Harford County in May of 1971, prior to the institution of the action for specific performance, despite the provisions of the Code requiring recorded instruments to be acknowledged. There was a further finding that the assignment had never been recorded among the land records although what purported to be an acknowledgment had somehow been completed on 7 November 1973, well after the institution of this proceeding.

The chancellor determined, and we agree, that the unacknowledged lease was valid as between the Petricks and

Evershield, the parties, despite the fact that the absence of the acknowledgments may not have been corrected by the curative act, Code (1957, 1966 Repl. Vol., 1971 Cum. Supp.) Art. 21, § 99. While none of our cases may flately so hold, *see*, however, *Adams v. Avirett*, 252 Md. 566, 568, 250 A. 2d 891 (1969); Note, *Absolute Necessity of Acknowledging a Deed of Gift in Maryland*, 12 Md. L. Rev. 166, 173 (1951), it is palpably clear that the thrust of the present curative act, now Code (1974), Real Property Article § 4-109 (c) (1) and (4) is directed at a defective acknowledgment, and not at the complete lack of an acknowledgment of consideration or disbursement. In any event, the new curative act, § 4-109, is by its terms not applicable to a defective grant recorded before 1 January 1973 if the defect, as it was here, is challenged in a judicial proceeding commenced by 1 July 1973. For reasons to be developed, we think that the rights and responsibilities of the parties to the lease do not hinge entirely on the curative act.

More than three decades ago, Maryland landlords and tenants adopted a practice of not recording long-term leases for commercial and mercantile properties, apparently because of the reluctance of one or both of the parties to make a public disclosure of the amount of rent reserved, particularly in instances where the rent was fixed as a percentage of sales.

In 1948, our predecessors decided two cases which unsettled the business community. Both involved unrecorded leases for terms greater than seven years. In *Hyatt v. Romero*, 190 Md. 500, 58 A. 2d 899 (1948), the lease was for an initial term of six years with an option to renew for an additional period of six years. The Court concluded that, since it was not the intention of the parties that a new lease be entered into upon exercise of the renewal option, the lease was actually for a period of more than seven years, and, therefore, could pass no legal interest or estate in the land if not recorded as required by Code (1939) Art. 21, § 1,[3]

---

**3.** "No estate of inheritance or freehold, or any declaration or limitation of use, or any estate above seven years, shall pass or take effect unless the

which was then in effect, but that a tenancy, upon all terms of the lease except as to duration, would be implied from the lessee's occupancy of the premises and the payment of rent which was accepted by the lessor.

Exactly two months later, the Court decided *Darling Shops Delaware Corp. v. Baltimore Center Corp.*, 191 Md. 289, 60 A. 2d 669, *noted in* 9 Md. L. Rev. 362 (1948). There, the tenancy was for a term of 10 years, but the lease was not recorded. Relying on *Hyatt v. Romero, supra,* the Court held that by payment and acceptance of the rent, a tenancy from year to year was created which was terminable on any anniversary date by the giving of three months' notice. Because something less than three months' notice had been given prior to the end of the tenth year, the Court concluded that the tenancy renewed itself for an additional year, and the judgment which had been entered below for the restitution of the premises was reversed.

There was a vigorous dissent by Judge Charles Markell, who believed the better view to be that a tenant under an unrecorded lease, although a tenant from year to year, was entitled to no notice of termination at the end of the last year of the term mentioned in the lease.

In the wake of these cases, Code (1939) Art. 21, § 1 was first amended by Chapter 507 of the Laws of 1949 to meet the *Hyatt v. Romero* situation, and was again amended by Chapter 565 of the Laws of 1951, adding two exceptions to the requirement that a lease for more than seven years be recorded:

> ". . . except that this section shall not apply to any lease or sub-lease for an initial term of not more than seven years which contains any provision for

deed conveying the same shall be executed, acknowledged and recorded as herein provided; and all such deeds shall be acknowledged before some one of the officers named in sections three, four, five and six of this article, and any unmarried woman between the age of eighteen years and twenty-one years, shall have power to make a deed of trust of her property, real, personal or mixed; provided, the same shall be approved and sanctioned by a court having equity jurisdiction in the city or county where the grantor resides, upon the petition of said grantor, and such proof as the said court in its discretion may require."

renewal for one or more succeeding stated terms of not more than seven years each, if under such provision for renewal the right to effect or prevent each such renewal term shall be optional with either the landlord or the tenant; and provided, further, that whenever a lease or sub-lease to which this section shall apply has been executed, but has not been acknowledged or recorded or neither acknowledged nor recorded, as herein provided, such lease or sub-lease shall, notwithstanding the provisions of this section, be valid and binding, and of full force and effect both at law and in equity, between the original parties to such lease."

Thus the rules in *Hyatt v. Romero* and *Darling Shops*, both *supra*, were modified by statute.

Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.) Art. 21, § 1 contained these exceptions when the Evershield lease was executed on 3 October 1969, and *Hyatt v. Romero* and *Darling Shops* are not applicable. *See also Jacobs v. Klawans*, 225 Md. 147, 169 A. 2d 677 (1961), upholding the constitutionality of Chapter 565 of the Laws of 1951, and holding that an unrecorded lease for a term of 10 years was thereby made binding between the parties.

By Chapter 349, § 1 of the Laws of 1972, effective 1 January 1973, Article 21 of our Code was revised and reenacted and subsequently recodified as Code (1974), Real Property Article. Section 3-101 is the lineal descendant of former Article 21, § 1 and provides in part:

"(a) *General rule.* — Except as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed and recorded.

"(b) * * *

"(c) *Certain leases for less than seven years.* — The recording requirement of subsection (a) does

not apply to any lease for an initial term not exceeding seven years if each renewal term under the lease (i) is for seven years or less, and (ii) by the provisions of the lease, may be effected or prevented by a party to the lease or his assigns.

"(d) *Persons against whom unrecorded lease effective.* — If a lease required to be executed and recorded under the provisions of subsection (a) is executed but not recorded, the lease is valid and fully effective both at law and in equity (i) between the original parties to the lease and their personal representatives, (ii) against their creditors, and (iii) *against and for the benefit of any other person who claims by, through, or under an original party and who acquires the interest claimed with actual notice of the lease or at a time when the tenant, or anyone claiming by, through, or under the tenant, is in such actual occupancy as to give reasonable notice to the person."* (emphasis supplied).

The posture in which this case reaches us is essentially this. There is an unacknowledged lease for more than seven years, invalid, unless saved by statute, except as between the parties, the Petricks and Evershield. There is an unrecorded assignment of a tenancy for more than seven years, invalid, unless saved by statute, except as among Evershield, Micamatix and Layton, the parties to the assignment. If Layton cannot claim through Evershield, Evershield's liability to the Petricks would be unaffected, and Layton would become Evershield's sublessee, *Rubin v. Leosatis*, 165 Md. 36, 42, 166 A. 428, 430 (1933).

While Layton may be able to enforce his rights as assignee against Evershield, he cannot do so against the Petricks, with whom he is not in privity, unless he can avail himself of the provision of Code (1974), Real Property Article § 3-101 (d) (iii) giving full force and effect to an unrecorded lease

"against and for the benefit of any other person who claims by, through, or under an original party and who acquires the interest claimed with actual

> notice of such lease or at a time when the tenant, or anyone claiming by, through, or under the tenant, is in such actual occupancy as to give reasonable notice to such person."

The transitional provisions of new Article 21, now Title 15 of the Real Property Article, provide, in § 15-101, that the effective date of the 1972 act was 1 January 1973. Section 15-102 (1) provides that § 3-101 (a) shall apply to "all deeds whether executed before or after the effective date," and § 1-101 (c) defines "deed" as including any lease or assignment. Presumably, the purpose of § 15-102 (1) was to make all provisions regarding unrecorded "deeds" of § 3-101 retrospective, including present subsection (d) (iii) which appeared in § 3-101 (a) of the new Article 21 in 1973 but became § 3-101 (d) (iii) of the Real Property Article in 1974, see *Janda v. General Motors Corp.*, 237 Md. 161, 168-69, 205 A. 2d 228, 232-33 (1964), which carefully sets forth the rules governing the retrospective application of statutes.

In order for Layton to prevail under § 3-101 (d) (iii), he must be able to succeed to Evershield's rights as lessee. This would require proof either: (i) that Evershield was in possession, and had not breached any covenant of the lease, including the covenant to pay rent, at the time the specific performance suit was instituted, or (ii) that Layton had paid the rent which should have been paid by Evershield, had performed or was prepared to perform the other covenants of the lease, and therefore claimed that he was entitled to enter into possession, which he demanded on 22 October 1971 and sought to enforce in his specific performance action.[4]

None of this seems to have been developed in the evidentiary hearing held below, and until it is, the rights of the parties cannot be precisely determined. We therefore

---

4. It will be recalled that Layton had paid rent, and the Petricks had accepted his payments, from about August, 1971 until February, 1972, when payments ceased under the oral stipulation. Layton testified that he had visited the property with his insurance agent a week or two after 22 October 1971 to arrange for insurance coverage but was denied entry by Petrick.

propose to remand the case, without affirmance or reversal, for the taking of additional testimony upon which appropriate findings of fact can be predicated.

> *Case remanded without affirmance or reversal for further proceedings consonant with the views herein expressed; costs to abide the result.*