520 A.2d 1319

## WASHINGTON SUBURBAN SANITARY COMMISSION

v.

## RIVERDALE HEIGHTS VOLUNTEER FIRE CO. INC. et al.

No. 116, Sept. Term, 1986.

Court of Appeals of Maryland.

Feb. 10, 1987.

Sheila D. Collins, Principal Counsel (Nathan J. Green-baum, Gen. Counsel, on brief), Hyattsville, for appellant.

Lloyd J. Snow (Alvin I. Frederick and Eccleston & Seidler, on brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

RODOWSKY, Judge.

Maryland Code (1974, 1984 Repl.Vol.), § 5–309.1(a) of the Courts and Judicial Proceedings Article (the Act) provides:

Notwithstanding any other provision of law, except for any willful or grossly negligent act, a fire company or rescue company, and the personnel of a fire company or rescue company, are immune from civil liability for any act or omission in the course of performing their duties.

The Act is part of Ch. 546 of the Acts of 1983, effective July 1, 1983.[1] In this appeal we shall hold that the Act does not confer immunity for allegedly tortious conduct occurring prior to the Act's effective date.

On January 25, 1980, fire damaged an apartment house in Riverdale. The fire insurer paid $462,668.79 in settlement of the loss and then sued Washington Suburban Sanitary Commission (WSSC) alleging that WSSC had caused a substantial delay in fighting the fire and that the delay had increased the loss. Firefighters had initially attempted to obtain water from the fire hydrant closest to the fire, but that hydrant was dry, so the firefighters had to go some unspecified distance to obtain water from a working hydrant. The insurer alleged that WSSC had the duty to maintain the fire hydrants and that prior to January 25, 1980, it had been put on notice of the defective fire hydrant.

On September 10, 1984, approximately fourteen months after the Act went into effect, WSSC filed a third-party complaint, later amended, against Riverdale Heights Volunteer Fire Co., Inc. (Fire Co.), which had responded to the fire. WSSC alleged that Fire Co. initially attached its hoses to a hydrant which Fire Co. knew was inoperable and that this negligence was active and primary while any negligence on the part of WSSC was passive and secondary.

---

**1.** Section 5–309.1(b) provides the following exceptions to the generality of the immunity granted by subsection (a):

(b) *Waiver of immunity.*—(1) The immunity granted by this section is waived with respect to actions to recover damages for the negligent operation of a motor vehicle to the following extent:

(i) For a self-insured fire company or rescue company, liability shall extend up to the minimum insurance limits imposed by § 17–103 of the Transportation Article; and

(ii) For a fire company or rescue company insured by an insurer authorized to issue insurance policies in this State, liability shall extend up to the maximum limit of any basic vehicle liability insurance policy it has in effect, exclusive of excess liability coverage.

(2) The immunity granted by this section is not waived and may be raised as a defense as to any amount of damages claimed above the limits in this subsection and as to any other action for damages not involving the negligent operation of a motor vehicle.

Alternatively, WSSC averred concurrent negligence. WSSC demanded judgment against Fire Co. for indemnity or contribution.

Fire Co. moved to dismiss on the ground that it had been immunized by the Act from liability for simple negligence. The trial court granted this motion, reasoning that the Act applied to WSSC's claims for contribution or indemnity which had not accrued by July 1, 1983, because WSSC had not made any payment to the insurer. Although given an opportunity to amend the third-party complaint if it could allege that Fire Co.'s conduct was willful or grossly negligent, WSSC declined to do so and suffered judgment against it on the third-party claim.

WSSC's attempt to appeal before any final judgment had been entered under Maryland Rule 2–602 was dismissed. Thereafter, on January 10, 1986, WSSC settled with the insurer and a judgment by consent in the amount of $140,-000 was entered in favor of the insurer against WSSC. WSSC timely filed an order for appeal "from the judgment entered on January 10, 1986." We issued the writ of certiorari on our own motion prior to consideration of this case by the Court of Special Appeals.

In essence, WSSC contends that the circuit court erroneously gave a retrospective application to the Act. Fire Co. has moved to dismiss the appeal and, on the merits, submits that the Act was properly applied to causes of action which had not accrued when the Act took effect.

I

According to Fire Co., WSSC precluded appellate review of the April 1985 dismissal of the third-party complaint by saying in the order for appeal that it was "from the judgment entered on January 10, 1986." This form of order, says Fire Co., limited the appeal to that judgment by consent. Because no appeal lies from a consent judgment, Fire Co. submits that this appeal must be dismissed.

 It is true "that a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review." *Franzen v. Dubinok*, 290 Md. 65, 69, 427 A.2d 1002, 1004 (1981). But, this order for appeal does not confine our review to the consent judgment. Appellate jurisdiction requires a final judgment or an appealable interlocutory judgment, but the Maryland Rules do not require that the judgment complained of be identified in the order for appeal. Here WSSC pointed in its order for appeal to the fact that a final judgment had been entered on January 10, 1986, when the last unresolved claim in the action had been terminated by a consent judgment. The earlier interlocutory dismissal of the third-party claim, of which WSSC is aggrieved, then became reviewable on appeal, even if the consent judgment on the original complaint is not reviewable.

Fire Co.'s motion to dismiss the appeal is denied.

## II

In the case before us the Act in terms grants fire and rescue companies and their personnel immunity from liability for certain negligent conduct which is not willful or grossly negligent. The Act effects more than a mere change of practice, procedure, or remedy. It establishes a rule of substantive law. Under a purely prospective application of the Act, the victim of certain tortious conduct by a fire company, which might have been liable for the same conduct had the Act never been enacted, has no effective tort action for that conduct if it occurs on or after July 1, 1983. Under a retrospective application of the Act conduct prior to July 1, 1983, which was tortious and not immune when it occurred, would be immunized from liability.

 As a general rule, statutes are presumed to operate prospectively and are to be construed accordingly. *See, e.g., Rigger v. Baltimore County*, 269 Md. 306, 305 A.2d 128 (1973); *Kastendike v. Baltimore Association for Re-*

*tarded Children, Inc.,* 267 Md. 389, 297 A.2d 745 (1972); *State Farm Mutual Automobile Insurance Co. v. Hearn,* 242 Md. 575, 219 A.2d 820 (1966); *but cf. Spielman v. State,* 298 Md. 602, 471 A.2d 730 (1984) (there is no absolute bar to retrospective application). The presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary. *State Farm Mutual Automobile Insurance Co. v. Hearn, supra.* Moreover, even where permissible, retrospective application is not found except upon the plainest mandate in the legislation. *Bell v. State,* 236 Md. 356, 204 A.2d 54 (1964). The rationale underlying the general rule provides that retrospective application, which attempts to determine the legal significance of acts that occurred prior to the statute's effective date, increases the potential for interference with persons' substantive rights. *State Commission on Human Relations v. Amecom Division of Litton Systems,* 278 Md. 120, 360 A.2d 1 (1976).

For example, *State Farm Mutual Automobile Insurance Co. v. Hearn, supra,* involved a statute which required an automobile liability insurer to demonstrate that it had been prejudiced by lack of notice of an accident in order to disclaim coverage for failure of the insured to give notice as required by the policy. This statute changed prior case law which did not require prejudice. We held that the statute, which provided simply that it would become effective on June 1 of 1964, did not apply to a policy in effect when an accident occurred on March 3, 1964. There (242 Md. at 582, 219 A.2d at 824) we said that

> "[t]he general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary. Retroact[ivity], even where permissible, is not favored and is not found, except upon the plainest mandate in the act." *Bell v. State,* 236 Md. 356, 369, 204 A.2d 54 (1964). See also cases cited in 20 M.L.E. Statutes § 164 (1962). This rule of construction is particularly applicable where

the statute adversely affects substantive rights, rather than only altering procedural machinery. *Beechwood Coal Co. v. Lucas*, 215 Md. 248, 253–54, 137 A.2d 680 (1958) and cases therein cited. See also *Janda v. General Motors Corp.*, 237 Md. 161, 169–71, 205 A.2d 228 (1964).

Fire Co. necessarily seeks a retrospective application of the Act because this case concerns the legal consequences of alleged conduct on the part of Fire Co. occurring on January 25, 1980. It urges that, absent constitutional prohibition or contrary legislative intent, a newly enacted statute is applied to decide substantive issues in cases pending when the statute becomes effective. To support this proposition Fire Co. rests heavily on *Janda v. General Motors Corp.*, 237 Md. 161, 205 A.2d 228 (1964).

Unlike the instant case, *Janda* involved a statute the terms of which clearly reflected a retroactive intent. Although the statute was enacted effective June 1, 1963, it laid down a rule of eligibility for unemployment compensation which applied to employees under collective bargaining agreements in effect on December 6, 1962. The statute had the obvious purpose of changing, in part, a statutory disqualification which, following approval on a referendum, had become effective December 6, 1962.

Although the holding of *Janda* is of no help to Fire Co., there is dicta in that opinion which supports its position. *Janda* undertook to state "[v]arious rules [that] have been formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively." 237 Md. at 168, 205 A.2d at 232. The opinion then set forth four rules, the fourth of which is relied on by Fire Co.:

"(4) A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy

are involved, unless the Legislature intended the contrary." [*Id.* at 169, 205 A.2d at 233.[2]]

*Janda*'s collection of rules was not intended to restate the universe of then Maryland law on prospective or retrospective application of statutes. Further, *Janda* recognized that the various categories of matters utilized in stating those rules tend to overlap and are not easily applied. 237 Md. at 170, 205 A.2d at 233.

The fourth rule in *Janda* nevertheless can be read to say in effect that, as to matters in litigation on the effective date of a statute, the statute ordinarily is to be applied, unless the General Assembly intended the contrary.

This Court has never applied the fourth rule in *Janda* to decide a case. This Court has cited *Janda* for a number of propositions, including: (1) statutes are presumed to operate prospectively, unless a contrary intent appears, *see Slate v. Zitomer,* 275 Md. 534, 540–41, 341 A.2d 789, 793 (1975), *cert. denied sub nom. Gasperich v. Church,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976), *Blocher v. Harlow,* 268 Md. 571, 579–80, 303 A.2d 395, 399 (1973), *Unsatisfied Claim & Judgment Fund Board v. Bowman,* 249 Md. 705, 708, 241 A.2d 714, 716 (1968) (especially where substantive rights are involved), and *Dixon v. Checchia,*

---

**2.** The first three of *Janda*'s various rules are:

"(1) 'Ordinarily a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions [and matters] whether accrued, pending or future, unless a contrary intention is expressed.' "

"(2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect: ' * * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. . . .' "

"(3) A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law."

249 Md. 20, 23, 238 A.2d 247, 249 (1968); (2) a statute governing procedure or remedy will be applied to cases pending when the statute becomes effective, *see Starfish Condominium Association v. Yorkridge Service Corp.,* 295 Md. 693, 705, 458 A.2d 805, 811 (1983), *Mraz v. County Commissioners,* 291 Md. 81, 90, 433 A.2d 771, 776–77 (1981), *Winston v. Winston,* 290 Md. 641, 650, 431 A.2d 1330, 1334 (1981), *Aviles v. Eshelman Electric Corp.,* 281 Md. 529, 533, 379 A.2d 1227, 1229 (1977), *Holmes v. Criminal Injuries Compensation Board,* 278 Md. 60, 63 n. 2, 359 A.2d 84, 86 n. 2 (1976), and *Luxmanor Citizens Association v. Burkart,* 266 Md. 631, 645, 296 A.2d 403, 410 (1972); (3) a statute will be given a retrospective effect if that is the legislative intent, *see Attorney Grievance Commission v. Klauber,* 284 Md. 306, 308, 396 A.2d 253, 254 (1979), *State Commission on Human Relations v. Amecom Division of Litton Systems, supra,* 278 Md. 120, 123, 360 A.2d 1, 4, and *Layton v. Petrick,* 277 Md. 421, 430, 355 A.2d 466, 471 (1976); and (4) a statute, even if intended to apply retrospectively, will not be given that effect if it would take vested rights, deny due process, or violate the prohibition against *ex post facto* laws, *see Vytar Associates v. Mayor & Aldermen of Annapolis,* 301 Md. 558, 572 n. 6, 483 A.2d 1263, 1270 n. 6 (1984), *Spielman v. State, supra,* 298 Md. 602, 607, 471 A.2d 730, 733, and *Cooper v. Wicomico County,* 278 Md. 596, 600, 366 A.2d 55, 58 (1976).

In *Board of Public Works v. Larmar Corp.,* 262 Md. 24, 58, 277 A.2d 427, 443 (1971), we quoted the fourth rule from *Janda* to support a *prospective* application of a statute. On August 1, 1968, the Board of Public Works had adopted a policy of charging fees to persons taking borrow material from the bottom of navigable waterways. A statute effective July 1, 1970, established a licensing system for dredging in wetlands and authorized the Board, *inter alia,* to issue licenses and to set fees. In a declaratory judgment action a circuit court had decided that the appellee, a riparian owner, need pay no compensation to the State for material which the appellee proposed to dredge from wet-

lands. We reversed and held that the riparian owner was obligated to pay the license fee. We declined, however, to opine on whether the 1970 statute retrospectively authorized the policy adopted in 1968 by the Board. It was sufficient to declare the rights of the parties in their future relationships under the 1970 statute.

*State v. Johnson*, 285 Md. 339, 343, 402 A.2d 876, 878 (1979), referring to the proposition set forth as the fourth rule in *Janda*, described it as an exception to the principle that a retroactive operation of a statute is disfavored. The discussion involving *Janda*'s fourth rule is dictum in *Johnson*. The latter case, for reasons which are not pertinent here, declined to apply to an order entered at a probation revocation hearing a statute enacted while the appeal from that order was pending.

Because it is inconsistent with the general body of Maryland law on the subject, the fourth rule in *Janda* is disapproved.

Fire Co. emphasized, particularly at oral argument, that we should approach questions of prospective or retrospective application of statutes by using the analytical model articulated in *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), under which retrospective operation is presumed. The Court of Special Appeals has viewed the *Bradley* model as consistent with *Janda* and applied that analysis in *Maryland Insurance Guaranty Association v. Muhl*, 66 Md.App. 359, 504 A.2d 637 (1986) and in *T & R Joint Venture v. Office of Planning & Zoning*, 47 Md.App. 395, 424 A.2d 384 (1980).

*Bradley* was a protracted school desegregation case in which the federal district court had awarded attorneys' fees to the plaintiffs' counsel without statutory support for that award. While the order to pay counsel fees was pending on appeal, Congress enacted a statutory provision authorizing the award of counsel fees in school desegregation cases. *Bradley* held that the provision was to be applied in determining the propriety of the fee award for legal services

rendered prior to the effective date of the provision when the issue was pending on appeal at the time the provision became law.

The Court in *Bradley* began its analysis of the retrospectivity issue with the words of Chief Justice Marshall in *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801), a prize case in which the Court decided the appeal by applying a convention entered into with France while the case was on appeal. As expressed in *Schooner Peggy*

"[i]t is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional ... I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." [416 U.S. at 711–12, 94 S.Ct. at 2016, 40 L.Ed.2d at 488 (quoting 1 Cranch at 110).]

*Bradley* points out that it remained unclear following *Schooner Peggy* whether the rule of that case was to be given effect only where the new law by its terms was to apply to pending cases, as was true of the convention with France, or whether the change in the law must be given effect unless there was a clear indication that it was not to apply in pending cases. "Ultimately, in *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268 [, 89 S.Ct. 518, 21 L.Ed.2d 474] (1969), the broader reading of *Schooner Peggy* was adopted, and [the Supreme] Court ruled that 'an appellate court must apply the law in effect at the time

it renders its decision.' " *Bradley*, 416 U.S. at 714, 94 S.Ct. at 2017 (quoting *Thorpe*, 393 U.S. at 281, 89 S.Ct. at 526).

"The Court in *Thorpe*, however, observed that exceptions to the general rule that a court is to apply a law in effect at the time that it renders its decision 'had been made to prevent manifest injustice,' citing *Green v. United States*, 376 U.S. 149 [84 S.Ct. 615, 11 L.Ed.2d 576] (1964)." *Bradley*, 416 U.S. at 716–17, 94 S.Ct. at 2019 (footnote omitted). *Bradley* then explained that "[t]he concerns ... relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019.

Applying those principles the Court found no manifest injustice in *Bradley*. School desegregation litigation differs from mere private cases between individuals. The attorneys in *Bradley* had been acting as private attorneys general and the new statute dealt with a great national concern. Although the Court would refuse to apply an intervening change in the law if to do so would infringe upon or deprive a person of a right that had matured or become unconditional, the school board in *Bradley* did not have a matured or unconditional right in funds allocated to it by taxpayers. Finally, the new statute imposed no additional burden on the school board that at all times had a constitutional responsibility to provide pupils with a nondiscriminatory education.

In *private* litigation it would probably be a rare case indeed in which the result would change depending upon whether the court presumes the new statute to apply and then "struggle[s] hard against a construction which [would], by a retrospective operation, affect the rights of parties," *Schooner Peggy*, 1 Cranch at 110, or whether the court presumes a prospective operation. *Cf. Chevy Chase Savings & Loan, Inc. v. State*, 306 Md. 384, 509 A.2d 670 (1986) (statute deferring withdrawal of capital by insured institution from corporate insurer of accounts validly applied to their preexisting executory contract, particularly

under circumstances of statewide economic emergency in the savings and loan industry). Either presumption yields to a contrary legislative intent of sufficient clarity.

We deal here with a matter of state law. We are far from persuaded that the *Bradley* analysis involves any greater precision in reasoning or produces a more predictable result than an analysis applying this Court's decisions in this troublesome area. The foregoing review demonstrates that under the law of Maryland statutes ordinarily are construed to operate prospectively, absent a clear legislative intent to the contrary. Further, when the General Assembly intends a statute to have a retrospective application, it knows how to express that intent. *See, e.g., Vytar Associates v. Mayor & Aldermen of Annapolis, supra* (statute imposing retroactive license fees; held invalid); *Evans v. McCoy,* 291 Md. 562, 436 A.2d 436 (1981) (statute creating presumption of meaning of "child" made expressly applicable to instruments executed before statute effective); *Washington National Arena v. Prince George's County,* 287 Md. 38, 410 A.2d 1060 (statute imposing retroactive tax; held invalid), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *Purifoy v. Mercantile-Safe Deposit & Trust Co.,* 273 Md. 58, 327 A.2d 483 (1974) (statute creating presumption of meaning of "child" made expressly applicable to instruments executed before statute effective); *Dryfoos v. Hostetter,* 268 Md. 396, 302 A.2d 28 (1973) (statute retroactively curing defective acknowledgments on deeds of trust; held invalid); *National Can Corp. v. State Tax Commission,* 220 Md. 418, 153 A.2d 287 (1959) (statute imposing retroactive tax; held valid); *Comptroller v. Glen L. Martin Co.,* 216 Md. 235, 140 A.2d 288 (statute imposing retroactive tax; held invalid), *cert. denied,* 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958).

■ Accordingly, the Act involved in the case before us is, under the general rule, presumed to operate prospectively. The inquiry then becomes whether the General Assembly intended a retrospective operation. Nothing in the

statute supports an interpretation that would give the Act retrospective effect. Indeed, a construction that would give the Act a retrospective application is to be avoided because, if validly retrospective, the Act would cut off fully accrued causes of action for compensatory damages of victims of ordinary negligence by fire companies. A construction which produces that kind of interference with substantive rights, whether or not the interference is of constitutional magnitude, is to be avoided.

Fire Co. alternatively submits that a legislative intent for retrospective operation of the Act is manifested by the legislative history. Courts & Judicial Proceedings Art. § 5–309.1 was Senate Bill 731 of the 1983 Session of the General Assembly. The file of the Senate Judicial Proceedings Committee on S.B. 731 reflects that the legislation was a response to *Utica Mutual Insurance Co. v. Gaithersburg-Washington Grove Fire Department, Inc.,* 53 Md. App. 589, 455 A.2d 987, *cert. denied,* 296 Md. 224 (1983). *Utica Mutual* was a negligence action brought by a fire insurance company, as subrogee of its insured, against a fire company for alleged negligence in failing properly to extinguish a fire which later reignited leading to a second fire. The circuit court had held that the fire company enjoyed governmental immunity but the Court of Special Appeals reversed, holding that whether a fire company enjoyed governmental immunity was a question of fact on which the fire company in *Utica Mutual* had failed to produce sufficient evidence. The intermediate appellate court decided *Utica Mutual* on February 2, 1983, and on February 3, 1983, a member of the Maryland Senate requested the Department of Legislative Reference to prepare a bill granting immunity to volunteer firefighters. As introduced the bill provided that "[a] volunteer fire company is immune from liability in the same manner as a local government agency for any act or omission in the course of performing its duties if [ ] the act or omission is not one of gross negligence...." The bill was amended in the course of passage to its present form.

From that background Fire Co. argues that volunteer fire companies enjoyed governmental immunity prior to the *Utica Mutual* case, that the purpose of the Act is to restore that governmental immunity, and that this purpose dictates retroactive application of the statute.

■ Fire Co. is mistaken in its premise that volunteer fire companies generally enjoyed immunity from liability for negligence as instrumentalities of municipalities exercising a governmental function. Fire Co. is based in Prince George's County. Even if Fire Co. were in fact an instrumentality of Prince George's County, Maryland, the municipal corporation, at the time of the fire involved in this case, or at any time thereafter, Fire Co. did not on that basis have governmental immunity. At all relevant times Prince George's County had by § 1013 of its Charter waived the defense of governmental immunity. *See generally Prince George's County v. Fitzhugh,* 308 Md. 384, 519 A.2d 1285 (1987).

■ Because the Act is not retroactive, we do not reach Fire Co.'s argument that the Act could validly be applied to make Fire Co. immune from WSSC's claim for contribution or indemnity on which WSSC had made no payment to the insurer as of the effective date of the Act.[3]

---

**3.** A claim for indemnification for payment or for contribution from a joint tortfeasor does not accrue for statute of limitations purposes until payment by the claimant. *See Southern Maryland Oil Co. v. Texas Co.,* 203 F.Supp. 449 (D.Md.1962) (applying Maryland law); *Cotham v. Board of County Comm'rs,* 260 Md. 556, 273 A.2d 115 (1971); *Read Drug & Chem. Co. v. Colwill Constr. Co.,* 250 Md. 406, 243 A.2d 548 (1968); *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 94 A.2d 26 (1953); *Associated Transp., Inc. v. Bonoumo,* 191 Md. 442, 62 A.2d 281 (1948); *Tadjer v. Montgomery County,* 61 Md.App. 492, 487 A.2d 658 (1985). In jurisdictions in which a right of contribution among joint tortfeasors is recognized, the right has been described as inchoate or contingent when the joint liability to the injured party arises and prior to payment of more than a pro rata share by the claimant. *See, e.g., Hassett v. Modern Maid Packers, Inc.,* 23 F.R.D. 661 (D.Md.1959); 2 S. Williston, *A Treatise on the Law of Contracts* § 345, at 772–76 (W. Jaeger 3d ed. 1959).

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEE.

It has been held that a Virginia statute which extinguished the inchoate right of a nonsettling joint tortfeasor to contribution from a settling joint tortfeasor as a legal effect of the settlement cannot constitutionally be applied when the joint tort occurred prior to the effective date of the statute. *See Carickhoff v. Badger-Northland, Inc.*, 562 F.Supp. 160 (W.D.Va.1983); *Potomac Hosp. Corp. v. Dillon*, 229 Va. 355, 329 S.E.2d 41, *cert. denied*, —— U.S. ——, 106 S.Ct. 352, 88 L.Ed.2d 320 (1985); *Shiflet v. Eller*, 228 Va. 115, 319 S.E.2d 750 (1984). On the other hand, it has been held that a dram shop act providing that "[n]o right of action for contribution or indemnity shall accrue to any insurer ... of any intoxicated person for any act of such intoxicated person against any" dram shop operator did apply to extinguish the inchoate right of contribution when the act took effect before the insurer had paid the person injured by its intoxicated insured. *See Dairyland Ins. Co. v. Mumert*, 212 N.W.2d 436 (Iowa 1973).