747 A.2d 1219 (2000)
358 Md. 278
COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY, Maryland, Sitting as District Council
v.
COLLINGTON CORPORATE CENTER I LIMITED PARTNERSHIP.
No. 79, Sept. Term, 1999.
Court of Appeals of Maryland.
March 13, 2000.
*1220 Steven M. Gilbert, Principal Counsel, Upper Marlboro, for Petitioner.
John P. McDonough (Vernell B. Arrington of O'Malley, Miles, Nylen & Gilmore, P.A., on brief), Calverton, for Respondent.
Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and MARVIN H. SMITH (retired, specially assigned), JJ.
RODOWSKY, Judge.
Here, a real estate developer was unsuccessful in convincing a District Council to remove a zoning restriction that had been imposed on the subject property pursuant to a plan submitted by the developer's predecessor in title. The Court of Special Appeals, in an unreported opinion, held that the restriction was invalidly imposed. As explained below, we shall hold that the invalidity, if any, was cured by retrospective legislation.

I
The petitioner is the County Council of Prince George's County, Maryland, sitting as the District Council pursuant to the Regional District Act, Maryland Code (1957, 1997 Repl.Vol.), Article 28.[1] Respondent, Collington Corporate Center I Limited Partnership, is the owner and developer of a 414-acre parcel located in the southwesterly quadrant of the intersection of U.S. Route 301 and Central Avenue (Md. Route 214) (the Property). In 1978, by Zoning Map Amendment (ZMA) No. A-9284, the property was zoned E-I-A (Employment and Institutional Area). An E-I-A Zone is one of the Comprehensive Design Zones authorized by the Prince George's County Zoning Ordinance. See Prince George's County Code (1995 ed.), Subtitle 27, "Zoning," Part 8, "Comprehensive Design Zones."[2]
One of the reasons for the District Council's authorizing Comprehensive Design Zones is "to use recent planning and zoning innovations." § 27-476(a)(1). The way in which land in a Comprehensive Design Zone will ultimately be developed is to be reflected in plans submitted for approval in a three phase zoning review procedure. § 27-478. These three phases are the Basic Plan, the Comprehensive Design Plan, and the Specific Design Plan. § 27-478(a)(1), (2), and (3). With respect to Basic Plans, the phase with which we are concerned in this case, § 27-478, in part reads:
"(a) The purposes of each individual Comprehensive Design Zone are intended to be satisfied by establishing incentives for good development, and the following three (3) phase plan review procedure:
"(1) The initial phase is the review of a Basic Plan which shall show the types, amounts, and general location of land uses proposed. The Basic Plan shall be reviewed concurrently with the review of, and action on, the [ZMA] application."
(Statutory cross-references omitted). The requirement for including the general location of land in a Basic Plan was added to § 27-478(a)(1) by Council Bill (C.B.) 18-1990, effective April 17, 1990, and discussed, infra. The three levels of plans in the review procedure are "reviewed and acted upon prior to, or concurrently with, the review of, and action on, a subdivision proposal." § 27-478(b).
At the time of the 1978 E-I-A zoning the Property was part of a larger tract. At that time, and today, warehouse and *1221 distribution use was and is a permitted use in an E-I-A Zone. In March 1989 the Property was the subject of a new Basic Plan, separate from the Basic Plan applicable to the remainder of the larger tract. This 1989 Basic Plan was submitted by Respondent's predecessor in title. The plan contained a number of conditions, one of which, Condition 7, restricted certain uses that were permitted in an E-I-A Zone under the Zoning Ordinance. Included among these restrictions in Condition 7 was "warehouse and distribution (except as accessory use)."[3]
The District Council approved the 1989 Basic Plan with Condition 7. In the course of the later zoning proceedings that are now before us, the Technical Staff of the National Capital Park and Planning Commission (NCPPC) described the 1989 zoning of the Property as follows:
"In 1989, the District Council supported the 1973 Comprehensive Plan land use and zoning recommendations as demonstrated in the conditions and considerations of the Basic Plan amendment (Zoning Ordinance No. 25-1989) for the subject property. To provide limited land use flexibility, warehouse and distribution use (as an accessory use only) was permitted, subject to architectural guidelines. Thereby, the District Council retained office type land use as the intended use and character for the subject property."
The District Council's 1989 action was taken pursuant to § 27-195, "Map Amendment approval." See § 27-195(a)(1) ("The District Council may approve or deny the application (including the Basic Plan)."). Also at that time, § 27-195(c)(1) and (2) read as follows:
"(c) Conditional approval.
"(1) When it approves the [ZMA], the District Council may impose reasonable requirements and safeguards (in the form of conditions) which it finds are necessary to either:
"(A) Protect surrounding properties from the adverse effects which might accrue from the [ZMA]; or
"(B) Further enhance the coordinated, harmonious, and systematic development of the Regional District.
"(2) In no case shall these conditions waive or lessen the requirements of, or prohibit uses allowed in, the approved zone...."
(Emphasis added).
The language italicized above became the keystone of the holding by the Court of Special Appeals in Rodriguez v. Prince George's County, 79 Md.App. 537, 558 A.2d 742, cert. denied, 317 Md. 641, 566 A.2d 101 (1989). In Rodriguez, the appellant sought to have two parcels of land zoned E-I-A, but, after anticipating opposition by the District Council, the appellant amended his Basic Plan to exclude certain uses that were otherwise expressly permitted in the E-I-A Zone. Id. at 546, 558 A.2d at 746. The District Council approved, and the circuit court affirmed. The Court of Special Appeals reversed. To summarize its holding it said that "the clear proscription of § 27-195(c)(2) can[not] be circumvented by the artifice of simply amending the Basic Plan to exclude uses that the Council finds, or might find, objectionable but which are expressly permitted *1222 in the E-I-A zone." Id. at 548, 558 A.2d at 747.[4]
In response to Rodriguez, the District Council amended § 27-195, "Map Amendment approval," by C.B. 18-1990. Section 27-195(a), as amended, reads (underlining indicates new matter):
"(a) In general
"(1) The District Council may approve or deny the application (including the Basic Plan). Approval shall be an approval of the general land use types, range of dwelling unit densities and commercial/industrial intensities, general circulation pattern, general location of major access points and land use relationships shown on the Basic Plan. Whenever an applicant designates a limitation of uses within an application, the District Council may approve specific land use types and their general locations within the development, in accordance with the applicant's designation, as part of its approval of the Basic Plan, in order to ensure overall compatibility of land use types within the proposed development and with surrounding land uses. Such an approval by the District Council shall become a part of the approved Basic Plan. The District Council may also specify certain planning and development matters (known as `considerations') for the Planning Board and Technical Staff to consider in later Comprehensive Design Plan, Specific Design Plan, or subdivision plat review. The specifics of the considerations shall be followed, unless there is a clear showing that the requirement is unreasonable under the circumstances."
Council Bill 18-1990 also amended § 27-195(c)(2), the provision relied upon in Rodriguez. In relevant part § 27-195(c)(1) and amended (c)(2) read as follows (underlining indicates new matter):
"(1) When it approves the [ZMA], the District Council may impose reasonable requirements and safeguards (in the form of conditions) .......
"(2) In no case shall these conditions waive or lessen the requirements of, or prohibit uses allowed in, the approved zone, except as provided in subparagraph (a)(1), above."
Of controlling significance to our disposition of the instant matter is § 2 of C.B. 18-1990 which reads:
"BE IT FURTHER ENACTED that this Ordinance shall apply to all Basic Plans regardless of date of actual approval but shall not apply to or affect any specific and particular use if a valid application for a building permit has been received by the Department of Environmental Resources prior to the effective date of this Ordinance."
(Emphasis added).
In September 1995 the Respondent applied to the District Council (Application No. A-9284-C) to revise the 1989 Basic Plan in order to eliminate the restriction against warehouse or distribution use *1223 when not as an accessory use.[5] When the matter reached the District Council through the administrative process in October 1996, the Council remanded the application to the zoning hearing examiner to determine, inter alia, the impact of Rodriguez. The examiner subsequently recommended that the District Council approve deletion of the restriction, but, on December 3, 1997, the District Council issued notice of its final decision rejecting the Respondent's amendment to the Basic Plan.
Respondent sought judicial review in the Circuit Court for Prince George's County, arguing, inter alia, that the restriction included in the 1989 Basic Plan was invalid under the Rodriguez application of § 27-195(c).[6] The circuit court sustained the District Council's action, and Respondent appealed to the Court of Special Appeals.
The Court of Special Appeals reversed on the ground that, under Rodriguez, the restriction in the 1989 Basic Plan violated § 27-195(c)(2), as it was in effect prior to C.B. 18-1990. With respect to the amendment to § 27-195(c)(2), the Court of Special Appeals stated:
"The change to the Code evidently was made in response to Rodriguez, although there is no indication that the change was intended to have retroactive application. The omission of such language causes prospective application of the statute...."[7]
We granted the District Council's petition for certiorari, 356 Md. 16, 736 A.2d 1064 (1999).

II
It is true that "[a]s a general rule, statutes are presumed to operate prospectively and are to be construed accordingly." Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co., 308 Md. 556, 560, 520 A.2d 1319, 1320 (1987) (WSSC). "The presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary." Id. at 561, 520 A.2d at 1321. "[E]ven where permissible, retrospective application is not found except upon the plainest mandate in the legislation." Id.
Here, even if we assume that Condition 7 was void under § 27-195(c)(2) as it read in 1989, § 2 of C.B. 18-1990 unambiguously expresses the plain legislative mandate to apply the amendments to § 27-195 retroactively as well as prospectively. Except where "a valid application for a building permit has been received by the Department of Environmental Resources prior to the effective date of this Ordinance," C.B. 18-1990 applies to "all Basic Plans regardless of date of actual approval."
In this Court Respondent first argues that C.B. 18-1990 is not retrospective, apparently because § 2 of the Ordinance was not codified. To support this argument *1224 Respondent cites to WSSC where we in part said that "`[t]he general presumption is that all statutes ... are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary.'" WSSC, 308 Md. at 561, 520 A.2d at 1321 (quoting State Farm Mut. Auto. Ins. Co. v. Hearn, 242 Md. 575, 582, 219 A.2d 820, 824 (1966) (internal attribution omitted)). At best, Respondent's reading of WSSC is too narrow. A primary source of legislative intent as to possible retrospective application ordinarily is the effective date clause of the bill, which usually is not codified. For example, in WSSC, when describing the statute involved in State Farm, we said "that the statute, which provided simply that it would become effective on June 1 of 1964 did not apply to a policy in effect [earlier]." WSSC, 308 Md. at 561, 520 A.2d at 1321.
Respondent next contends that, if the 1990 Ordinance is intended to be retroactive, it cannot apply to validate Condition 7 because that would deprive Respondent of a substantive right. In analyzing this argument we shall assume that Condition 7 was invalid so that, at least under the E-I-A zoning, warehouse and distribution use of a non-accessory type was permitted in 1989. Thus, the 1990 ordinance by validating Condition 7 and thereby prohibiting general warehouse and distribution use, had the same effect as if the Property had been downzoned in 1990. Our caselaw identifying vested rights that have a constitutional foundation ordinarily requires, at a minimum, that a valid building permit for the previously authorized use be issued. See Sycamore Realty Co. v. People's Counsel, 344 Md. 57, 684 A.2d 1331 (1996); Prince George's County v. Sunrise Dev. Ltd. Partnership, 330 Md. 297, 623 A.2d 1296 (1993); Rockville Fuel & Feed Co. v. Gaithersburg, 266 Md. 117, 291 A.2d 672 (1972); Richmond Corp. v. Board of County Comm'rs, 254 Md. 244, 255 A.2d 398 (1969). Here, no building permit was issued on the effective date of C.B. 18-1990 for a general warehouse and distribution use on the Property.[8] Indeed, in C.B. 18-1990, § 2, the District Council created statutory rights that were more favorable to property owners than constitutionally required because the ordinance makes its retroactive effect inapplicable to property owners, otherwise adversely effected, who had applied for a building permit. Prior to the effective date of the ordinance, Respondent's predecessor in title had not applied for a building permit that involved a general warehouse and distribution use on the Property.
Finally, Respondent argues that it cannot be bound by use limitations which it did not designate. We have held, however, that present owners are bound by the use restrictions acquiesced in by their predecessors in interest. See Skipjack Cove Marina, Inc. v. County Comm'rs, 252 Md. 440, 250 A.2d 260 (1969). Skipjack involved a marina that had been operating under a special exception, with conditions, obtained by a prior owner. The purchaser from the prior owner contended that no special exception had been necessary. We described the subsequent purchaser as having "taken subject to the prior decision of the Board." Id. at 450, 250 A.2d at 266.
For all the foregoing reasons we reverse the judgment of the Court of Special Appeals, and we remand this case to that court for consideration of the arguments that were raised by the parties but which were not addressed by that court in light of its ground of decision.
JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS IN THIS COURT TO BE PAID BY THE RESPONDENT, COLLINGTON *1225 CORPORATE CENTER I LIMITED PARTNERSHIP. COSTS IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.
Judge ELDRIDGE concurs in the result only.
NOTES
[1] Maryland Code, Article 28, § 8-101(a) provides, in part, "The County Councils of Montgomery County and Prince George's County are each individually designated, for the purposes of this article, as the district council for that portion of the regional district lying within each county, respectively."
[2] Henceforth in this opinion, unless otherwise noted, all statutory references are to the Prince George's County Zoning Ordinance, Subtitle 27 of the Prince George's County Code.
[3] Condition 7 of the 1989 Basic Plan read as follows:

"Land Use Types and Quantities:....
"7. The uses shall include all permitted uses in the E-I-A Zone, except the following:
"brewery or distillery; industrial metal, waste, rag, glass or paper salvage operation; manufacturing and assembly of metal products, such as automobiles and appliances; structural steel fabricating shops, machine shops, forges and foundries; manufacturing involving primary production from raw materials; warehouse and distribution (except as accessory use); and all agricultural uses (except floriculture, horticulture or gardening which may include a private noncommercial greenhouse are permitted)."
[4] The Court of Special Appeals also supported its holding in Rodriguez by the law of proscribed conditional zoning, citing Montgomery County v. National Capital Realty, 267 Md. 364, 297 A.2d 675 (1972). In that connection the Court of Special Appeals said:

"The applicant [in Rodriguez] was offering a deal to the District Council: in order to induce the Council to approve its application for reclassification, the applicant would agree in advance to exclude from the scope of the approval certain uses expressly permitted in the approved zone. Whatever the general right of the applicant to amend the Basic Plan may be, that right cannot be exercised in such manner as to violate the clear restrictions of § 27-195(c)(2). We think that what occurred here was no different in either purpose or effect from what was done, and condemned, in National Capital Realty."
Id. at 553-54, 558 A.2d at 750.
In the case before us there is no suggestion that the exclusion of "warehouse and distribution (except as accessory use)" from the 1989 Basic Plan for the Property was prompted other than by the concept of Respondent's predecessor in title for a type of development that would be consistent with that restriction.
[5] Respondent also sought an amendment, which was approved, reconfiguring the road circulation on the Property. No issue has been raised concerning that approval. Accordingly, we shall consider the instant matter to involve only the warehouse and distribution restriction.
[6] Specifically, Respondent argued:

"Section 27-195(c) authorizes the District Council to `impose reasonable requirements and safeguards'.... Section 27-195(c) also, however, provided at the time this [B]asic [P]lan was amended in 1989 that `[i]n no case shall these conditions waive or lessen the requirement of, or prohibit uses allowed in, the approved zone.' The facts of the Rodriguez case pertaining to the voluntary exclusion of the permitted uses are exactly the same as the subject case."
[7] Amended § 27-195(a) and (c), as codified in the Prince George's County Code, do not contain § 2 of C.B. 18-1990. A complete copy of C.B. 18-1990 was furnished to the Court of Special Appeals with the District Council's motion for reconsideration of that court's opinion. The attorney who appears for the District Council in this Court was not the attorney for the County Council in the Court of Special Appeals.
[8] Thus, it is unnecessary for us to review in this opinion the steps, additional to the issuance of a valid building permit, that must be taken in order to achieve vested constitutional rights under our cases.